STATE of Minnesota, Respondent,

v.

Merle Edward LEECY, Appellant.

No. 48822.

Supreme Court of Minnesota.

May 16, 1980.

C. Paul Jones, Public Defender, and Robert E. Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Alan L. Mitchell, County Atty., Duluth, Brian D. Simonson, Asst. County Atty., Hibbing, for respondent.

WAHL, Justice.

Defendant was found guilty by a district court jury of charges of simple assault and aggravated assault, Minn.Stat. §§ 609.22 and 609.225, subd. 2 (1978), and was sentenced by the trial court to concurrent terms of ninety days and five years in prison. The issues raised by defendant on this direct appeal relate to (1) the admission of evidence of other misconduct by defendant earlier in the evening of the assaults, (2) the admission of a prior conviction to impeach defendant and the lack of a cautionary instruction for the use of this evidence, (3) the suppression of the testimony of the estranged wife of the policeman who was the victim of the aggravated assault because of his claim of marital privilege against adverse testimony, and (4) the sufficiency of the evidence of defendant's participation in the aggravated assault. We affirm.

The crimes of which defendant was convicted arose from an evening of misconduct at the Orr Municipal Liquor Store by defendant and his brother, Michael, which started with defendant and his brother making threats, but escalated into assaultive behavior against one Don Plerchee and against the town chief of police, Phil Christenson. In defending himself against the aggravated assault, Christenson shot defendant and his brother, killing the brother.

1. The defendant's first issue on appeal relates to the court's admission, over

defense objection, of testimony concerning a threat defendant made against another customer of the store earlier in the evening in question. Defendant claims that this evidence was inadmissible evidence of prior misconduct and, further, that he should have been given a so-called *Spreigl* notice of the prosecutor's intent to use it. We hold that the trial court properly ruled that the evidence was relevant to the issue of whether defendant had any assaultive intent when he attacked Plerchee and later Christenson, which defendant denied, and that its probative value was not outweighed by any potential for unfair prejudice. See Rules 403 and 404(b), R.Evid. The prosecutor was not required to give defendant a *Spreigl* notice of his intent to use this evidence, because the incident was part of the immediate episode out of which the charges arose. See *State v. Spreigl*, 272 Minn. 488, 497, 139 N.W.2d 167, 173 (1965); Rule 7.02, R.Crim.P.

■ 2. Defendant's next contention relates to the trial court's denial of a defense motion to prohibit the prosecutor from eliciting, on cross-examination of defendant, a prior conviction of defendant, eight years earlier, for aggravated assault.

The applicable rule is Rule 609, R.Evid., which we recently discussed in *State v. Jones*, 271 N.W.2d 534 (Minn.1978). Under this rule the trial court had discretion to admit the prior conviction, which was not more than ten years old, if the court determined that the probative value of admitting the evidence outweighed its prejudicial effect; no showing by the prosecutor of unusual need was necessary. In *Jones* we listed the factors which the trial court should consider in exercising its discretion in such a situation:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the

charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue. See, 3 Weinstein, Evidence, pp. 609.64 to 609.80.4.

271 N.W.2d at 538.

We did not overrule *Jones* in *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979). In *Brouillette* we affirmed the conviction for fourth-degree criminal sexual conduct of a man who had been released from a six-month jail sentence for third-degree criminal sexual conduct only eight days before committing the fourth-degree offense. There, the trial court had ruled admissible evidence of that earlier conviction, which was just over one year old at the time of trial.[1] In the instant case, an eight-year-old aggravated assault conviction has little probative value and nothing to do with defendant's credibility. The real effect of admitting such a conviction is to prejudice the jury. Even if the trial court erred, however, in admitting this evidence for impeachment purposes, the error was harmless. The evidence of defendant's guilt was strong, the court's ruling did not keep defendant from testifying, defendant's version of what happened ran counter to the testimony of numerous witnesses, and the jury knew, through other testimony which was not objected to, that defendant had been involved in other "incidents" before and had a reputation as a town troublemaker. By failing to object, defendant forfeited his right to raise on appeal the issue of the trial court's failure to give a cautionary instruction limiting the use of this evidence.

■ 3. Defendant next contends that the trial court erred in refusing to permit the defense to call Christenson's estranged wife, where the final hearing in her divorce from Christenson had been held but the

---

1. Although our discussion here is limited to the question of whether prior crimes are admissible for the purpose of attacking defendant's credibility, under Rule 609, we note that at common law, where evidence of the defendant's prior convictions was inadmissible as substantive evidence of his guilt, an exception was often made to allow evidence of prior sexual offenses in prosecutions for other sexual offenses. *See* 65 Am.Jur.2d *Rape*, § 71 (1972); Annot., 77 A.L.R.2d 841, 864 § 15(a) (1961); Annot., 167 A.L.R. 565 (1947).

decree had not been made final. Defendant wanted to call her to testify to what Christenson on prior occasions and in the presence of others had said about the defendant and his brother and his desire to rid the town of them. The trial court ruled that the conversations in question were not confidential communications but that, since the divorce was not final, the privilege of the defendant to prevent his spouse from testifying against him still applied and, since Christenson had exercised the privilege, the testimony was inadmissible. The applicable statute is Minn.Stat. § 595.02 (1978), which reads as follows:

> Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:
>
> (1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage. This exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other or against a child of either, * * * nor to an action or proceeding for non-support, neglect, dependency, or termination of parental rights;

This statute, which was not superseded by any rule, provides two different privileges: the privilege to prevent a spouse from testifying at any time, during the marriage or after, concerning confidential interspousal communications made during the course of the marriage and the privilege to prevent a spouse from testifying against one during the course of the marriage. Here, as the trial court properly concluded, the first privilege had no application because all the communications in question were communications made when others were present; in other words, they were nonconfidential communications. Thus, we are dealing with the second privilege.

Our conclusion is that the trial court erred in sustaining the claim of privilege in this case. For one thing, as we have indicated in prior cases—see, e. g., State v. Feste, 205 Minn. 73, 285 N.W. 85 (1939); Evans v. Staalle, 88 Minn. 253, 92 N.W. 951 (1903); Lockwood v. Lockwood, 67 Minn. 476, 70 N.W. 784 (1897)[2]—the privilege against adverse spousal testimony applies only when the spouse who claims the privilege is a party, which Christenson was not. Secondly, while there are cases holding that the privilege technically survives until the divorce is final, see State v. Kampert, 139 Minn. 132, 165 N.W. 972 (1918), there is modern authority that a marriage well on its way to final dissolution will not support a claim of the privilege. See United States v. Fisher, 518 F.2d 836 (2d Cir. 1975), cert. denied, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975). Thirdly, when a private privilege comes into conflict with a defendant's right of compulsory process, the best approach would seem to be to narrow the privilege, if possible, or modify it. For full discussion, see Westen, The Compulsory Process Clause, 73 Mich.L.Rev. 71, 170–77 (1974).

While it thus appears that the privilege was not intended to apply in this case because Christenson was not a party, we are of the opinion that, even if the privilege technically were applicable, the defendant's right of compulsory process required a narrowing of the privilege in this case. We conclude, however, that the erroneous sustaining of this claim of privilege was not prejudicial since the evidence came in through two other witnesses, including Christenson's stepdaughter, and there was other credible evidence that Christenson did not have any high regard for defendant or his brother. In view of this and the over-

**2.** See also 2 D. Louisell and C. Mueller, Federal Evidence, § 218 (1978), stating that, except in grand jury proceedings, when neither spouse is a party, a witness has no privilege against adverse testimony by his spouse.

whelming evidence of defendant's guilt, we conclude that the error was nonprejudicial.

■ 4. Defendant's final contention, that the evidence of his guilt of aggravated assault was legally insufficient, is meritless. A review of the record indicates that on the evening in question and during the fight of the Leecy brothers with Don Plerchee, Phillip Christenson, the Orr, Minnesota town police chief, struck defendant on the head with his night stick. Plerchee then drove away. A short time later, defendant's brother, Michael, approached Christenson again and asked him to take defendant to the hospital so he could have his head wound (from the night stick) treated. As Christenson bent over to look under a passing train to see if the deputy's car was coming, Michael threw a surprise punch to Christenson's head, almost causing him to black out. Christenson got up, and both defendant and Michael came at him. Christenson dropped his night stick during the fight, and defendant grabbed it and began hitting him with it. Christenson was down on the ground and tried to get up, but the two kept hitting him, and Christenson felt dazed and close to losing consciousness. When he could not "hold out" any longer, he drew his gun and fired twice at the hip area of defendant and Michael. Both were hit, and both ran. An ambulance was called, but Michael was apparently dead, as a result of blood loss, before the ambulance arrived.

There were at least five eyewitnesses to the attack on Christenson. At the time of the fight, Judy Warzonek was in her car parked to the north of the liquor store. She testified that she first saw the Leecy twins attacking Christenson, who was blocking their blows with his night stick and his arm. At some point in the fight, she testified, the night stick changed hands to one of the Leecy brothers, who used it to strike Christenson with an up-and-down motion. Marie Lehto, a passenger in Judy Warzonek's car, testified that she saw one of the Leecy brothers take the night stick away from Christenson and hit him repeatedly.

Wayne Morgan, who lived in an apartment about 80 feet north of the liquor store, testified that he saw two people attacking a man later identified as Christenson. One of the attackers had a night stick and was "whaling away" at Christenson, while Christenson had his hands in the air in an attempt to protect himself.

Ernest Barto was standing by his car somewhat north of the liquor store at the time of the incident. He testified that he saw one of the Leecy brothers talking to Christenson. He glanced away at a passing train, and when he glanced back, Christenson was on the ground, and the brother had taken Christenson's night stick and had started hitting him with it. Barto looked at the train again, and when he looked back, the other Leecy brother had joined the fight. Barto then heard the shots and saw the Leecy brothers attempt to leave the scene.

Janet Aher was driving past the liquor store when she saw two young Indian men with fists raised advancing on Christenson, whose hands were raised in a protective gesture to ward off blows.

In view of the overwhelming evidence that defendant actively participated in an attack in which Christenson was viciously beaten with his own night stick, the defendant's conviction for the crime of aggravated assault is affirmed.

Affirmed.

SCOTT, Justice (concurring specially).

While I agree with the result of the majority, I must point out that the court's failure to properly apply the holding of State v. Brouillette, 286 N.W.2d 702 (Minn. 1979), in its general discussion regarding the admissibility of the prior conviction overtly conflicts with the doctrine of stare decisis, resulting in a lack of consistency and certainty in our case law. In Brouillette we analyzed at length the principles governing the admission of prior convictions into evidence under Minn.R.Evid. 609. After careful and thorough consideration of the various authorities, we stated (286 N.W.2d 707–08):

Of course, we must sustain this evidentiary ruling of the trial court unless a clear abuse of discretion is shown. *See, e. g., State v. Jones,* 271 N.W.2d 534 (Minn. 1978). In arguing that the trial court exceeded its discretionary authority, the defendant alleges that the prior conviction in question here does not involve any element of truth or veracity and, thus, is not probative of credibility. We are unpersuaded by this contention. Just because a crime is not directly related to truth or falsity does not mean that evidence of the conviction has no impeachment value. Indeed in *St. Paul v. DiBucci,* 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975), this court acknowledged that impeachment by prior crime aids the jury by allowing it "to see 'the whole person' and thus to judge better the truth of his testimony." This principle was expanded upon by another court as follows:

> The object of a trial is not solely to surround an accused with legal safeguards but also to discover the truth. What a person is often determines whether he should be believed. When a defendant voluntarily testifies in a criminal case, he asks the jury to accept his word. No sufficient reason appears why the jury should not be informed what sort of person is asking them to take his word. In transactions of everyday life this is probably the first thing that they would wish to know. * * * Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey * * * though the violations are not concerned solely with crimes involving "dishonesty and false statement."

*State v. Duke,* 100 N.H. 292, 293, 123 A.2d 745, 746 (1956). *See, also, State v. Ross,* 295 N.C. 488, 246 S.E.2d 780 (1978); *State v. Cote,* 108 N.H. 290, 235 A.2d 111 (1967). In addition, defendant's position is inconsistent with the policy manifested by the adoption of Rule 609. That rule clearly sanctions the use of felonies which are not directly related to truth or falsity for purposes of impeachment, and thus necessarily recognizes that a prior conviction, though not specifically involving veracity, is nevertheless probative of credibility.[9]

[9] The Comment to Rule 609 provides that the trial court may, in its discretion, admit "serious crimes, which do not directly involve dishonesty or false statement * * *," if the probative value outweighs the conviction's prejudicial effect. If felonies unrelated to truth or veracity had no probative value as to credibility, Rule 609 certainly would not have given a trial court the authority to admit these crimes into evidence.

Therefore, contrary to defendant's contention, evidence of defendant's prior crime was probative of his truthfulness.

In this case, the majority states that the defendant's prior conviction "has nothing to do with the defendant's credibility." Such language, which constitutes *dictum* unnecessary for resolution of the instant appeal, is obviously in direct contradiction with the recently decided *Brouillette* opinion. Similarly inconsistent with *Brouillette* is the majority's claim, again by way of *dicta,* that the "real effect of admitting such a conviction is to prejudice the jury." Moreover, in making this remark, the majority opinion pays no deference to the trial court's discretionary ruling, as it clearly must do. *E. g., Brouillette, supra; State v. Jones,* 271 N.W.2d 534 (Minn.1978). It is not our function to sit in the place of a trial judge; instead our responsibility as an appellate court is to uphold such an evidentiary ruling unless a clear abuse of discretion is shown. Whether the trial court abused that discretion is an issue we need not address in this case, and as a result the majority's reference to the propriety of the trial court's ruling is superfluous.

In summary, although I agree with the result, I object to the majority's failure to deal with the *Brouillette* decision in making certain statements regarding the admissibility of the prior crime. This error is compounded by the fact that, in light of our disposition of this appeal, the question of whether the prior crime was admissible need not be discussed or alluded to in the court's opinion.

PETERSON, Justice (concurring specially).

I join in the special concurrence of Justice Scott.

KELLY, Justice (concurring specially).

I join in the special concurrence of Justice Scott.

TODD, Justice (concurring specially).

I join in the special concurrence of Justice Scott.