STATE of Minnesota, Respondent,

v.

Donald L. HODGES, Appellant.

No. CX–85–1319.

Court of Appeals of Minnesota.

March 11, 1986.

Review Granted April 18, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant Donald L. Hodges was convicted of one count of felony murder in the second degree, three alternate counts of burglary in the first degree, and two counts of aggravated robbery.[1] At sentencing, the trial court granted the State's

---

1. The jury found appellant guilty of the following six offenses:

Count I: Murder in the Second Degree in violation of Minn.Stat. §§ 609.19, subd. 2, and 609.05 (1984) (unintentional death during burglary: victim Maude Mindrum)

Count II: Burglary in the First Degree in violation of Minn.Stat. §§ 609.582, subd. 1(a) and 609.05 (1984) (burglary of occupied dwelling: victims Y.K., Maude Mindrum and Laura Mindrum)

Count III: Burglary in the First Degree in violation of Minn.Stat. §§ 609.582, subd. 1(b), 609.05, and 609.11, subd. 4 (1984) (burglary while armed with a dangerous weapon)

Count IV: Burglary in the First Degree in violation of Minn.Stat. §§ 609.582, subd. 1(c), and 609.05 (1984) (burglary with assault: victim Y.K.)

Count VIII: Aggravated Robbery in violation of Minn.Stat. §§ 609.245, 609.05, and 609.11 (1984) (robbery while armed with a dangerous weapon: victim Y.K.)

Count IX: Aggravated Robbery in violation of Minn.Stat. §§ 609.245, 609.05, and 609.11 (1984) (robbery while armed with a dangerous weapon: victims Y.K. and Maude Mindrum)

motion for a sentencing departure and sentenced appellant to an aggravated term of imprisonment of 238 months, twice the presumptive sentence, for the conviction of second degree murder. Concurrent presumptive sentences were imposed for the less serious convictions. Hodges appeals, pursuant to Minn.R.Crim.P. 28.01, from the judgment of conviction and from the denial of his motion for a new trial to challenge the validity of his convictions and sentences. We affirm as modified.

### FACTS

The crimes occurred at a home located in south Minneapolis during the early morning hours of October 18, 1984. At that time, the home was occupied by 94-year-old Laura Mindrum, her 83-year-old sister-in-law, Maude Mindrum, and Y.K. Y.K. was a live-in nursing assistant who had been retained to care for Laura Mindrum, who was recovering from a stroke. At some time between 2:35 a.m., the time at which Y.K. went to bed, and 6:15 a.m., the time at which a neighbor heard her screams for help, John Walker, Norman Westberry, and appellant broke into the Mindrum residence with the intent to steal whatever money and valuable objects they could find. The evidence indicates that, as a result of the events which ensued that night, Maude Mindrum was literally scared to death.

The State's only eyewitness to the crimes was Y.K. She testified that she became aware of the burglary when one of the burglars, later determined to be Walker, dragged her from her bed while she was asleep. He slapped her, put his arm around her neck, and held a knife to her throat. He threatened to kill her if she were not quiet and demanded that she give him her money and jewelry. She told him she would have to go to the closet to get her purse and suitcase, and Walker allowed her to do so. He maintained his hold on her, however, and, in response to his continued threats of death, she urinated on the floor. During this time she also heard Maude Mindrum call for her to telephone the police.

After Y.K. had given Walker her money and jewelry, Walker asked her who was in the room across the hallway. Although she told him that the occupant was her patient, he nonetheless forced her to accompany him into Laura Mindrum's room. By the light from his lighter, Walker visually searched the top of the dresser for jewelry and then inquired if Laura Mindrum was wearing any rings. When Y.K. claimed she did not know, Walker walked to the bed and examined each of Laura Mindrum's hands. Laura Mindrum stirred momentarily and told him to get out of her room. Walker apparently complied with this order and led Y.K. downstairs to look for antiques.

Walker and Y.K. went into the dining room first. Walker again used his lighter to check the top of the buffet and two of the drawers. He then led Y.K. into the living room and told her to remove her underpants. When she failed to do so, Walker removed them himself and penetrated her vaginally with his finger and anally with his penis. Afterwards, he ordered her to put his penis in her mouth. She refused, and he instead wiped his penis on her robe. He then picked up the knife which, while sexually assaulting Y.K., he had continually held to her throat, and demanded to know if there was any more money in the house. Y.K. told him that there was some money on the lower shelf in the pantry but that she was not sure of its exact location. Walker threatened to kill her if she was lying. She suggested that Maude Mindrum would know the money's exact location. Walker then forced her to accompany him upstairs to Maude Mindrum's bedroom.

As Walker and Y.K. stood in the doorway of Maude Mindrum's bedroom, Y.K. discerned a figure of a man by one of the dressers. This man and Walker discussed the money which was hidden in the pantry, and then Walker led Y.K. to the kitchen. Maude Mindrum, who had been standing by her bed, and the other man followed them.

When Y.K. and the others arrived in the kitchen, a light was shining in the pantry, and Y.K. could discern another figure standing amid the items which had been pulled from the shelves. Maude Mindrum was forced to stand in front of the kitchen sink, facing Y.K., while Walker held a knife to Y.K.'s throat. Y.K. observed that Ms. Mindrum's face was "very white" and had lost all color, and that Ms. Mindrum appeared to be in a state of shock.

The man who had accompanied Ms. Mindrum to the kitchen asked her where the "God damn money" was, and one of the other burglars retrieved it and handed it to this man to be counted. The men then demanded to know where the telephone was, and Walker led Y.K. to it. He took the knife which he had been holding against her throat since they had left the living room and cut the telephone's cord. He ordered her to give him a key with which to unlock the front door. She complied. He then led her to the door and, after opening the lock, pushed her against the wall and slapped her twice. One of the other two men who were standing nearby told Walker to "hit her one more time for me." Walker did so and then threw her onto the stairway. He told her to go upstairs and threatened that, if she called the police, he would return to kill her. Y.K., whose back was injured when she fell, crawled up the stairs. After five or ten minutes had elapsed, she decided that it was safe to go downstairs and returned to the kitchen, where Maude Mindrum had been left standing. When she got to the kitchen, she found Maude Mindrum lying on her back on the floor. She checked for a pulse and determined that Maude Mindrum was dead. She sat in the living room for a few minutes and then ran to the front door to summon help. A neighbor heard her screams and directed his wife to notify the police.

Y.K. was taken to the Hennepin County Medical Center for a sexual assault examination which revealed that, as a result of the sexual assault, she was infected with gonorrhea bacteria. Maude Mindrum's body was transferred to the medical examiner's office for an autopsy which revealed that she had died as a result of cardiac arrhythmia. At trial, the physician who performed the autopsy and the chief medical examiner, who had been present during the autopsy and had reviewed the reports, testified that the cardiac arrhythmia had been caused by a combination of Maude Mindrum's underlying heart condition, hardening of the coronary arteries, and extreme emotional distress. In the opinion of both men, had Maude Mindrum not experienced the events which transpired immediately before her death, she would not have died at the time she did.

During the time the three burglars were in the Mindrum home, Y.K. never saw their faces and was thus unable to provide the police with any description of them, other than that each man was black. Accordingly, the only means available to identify the intruders was through identification of several latent fingerprints found at the scene. One of these fingerprints had been lifted from a window pane, which the burglars had removed from the window sash through which they entered the house. This fingerprint was processed through the Minnesota Automated Fingerprint Identification Network, and Walker, who had a prior arrest record, was identified as the most likely source. The police conducted a manual comparison of Walker's known fingerprints to the fingerprint from the window pane and to other fingerprints lifted from the scene. The examiner concluded that latent prints found on the exterior of the window frame, a flower pot, and the window pane were Walker's. A palm print found on the dresser in Maude Mindrum's bedroom was identified as appellant's.

On the basis of this information, the police obtained a search warrant for Walker and his home. The officers executed the warrant and arrested Walker on the night of October 18, 1984. When interrogated, Walker made a statement implicating himself, appellant, Westberry and a man named "Junior" in the burglary.

The following day, Walker, Westberry, and appellant were charged with one count of second degree, nonintentional felony murder in violation of Minn.Stat. §§ 609.-19(2) and 609.05. A week and a half later, the case was presented to the Grand Jury, which returned a multiple count indictment against the men. In addition to the original charge of nonintentional felony murder, the indictment charged three alternate counts of first degree burglary, three alternate counts of criminal sexual conduct in the first degree, and two counts of aggravated robbery. The defendants' cases were severed for trial.

Before the first trial, laboratory tests were conducted on the seminal fluid stains found on Y.K.'s robe and nightgown. These tests established that Walker could have been the donor of the fluid and that neither appellant nor Westberry could have been. A week after Walker's arrest, a physician assigned to the Hennepin County jail examined Walker and determined that he was suffering from gonorrhea.

At trial, Hodges elected to testify on his own behalf. He admitted that he, Walker, and Westberry committed the burglary, but denied responsibility for the sexual assault, robberies, and death which occurred that night. He claimed that he did not know Walker had a knife at the time they entered the Mindrum house; that he believed that the sole purpose of the burglary was to steal; that he had no idea that the house would be occupied; that he repeatedly attempted to flee the house once he realized it was occupied; and that he had no knowledge of the sexual assault until after Walker was arrested.

The jury found appellant not guilty of the three counts of criminal sexual conduct in the first degree but guilty of the remaining counts.

## ISSUES

1. Are appellant's multiple convictions and sentences precluded by Minn.Stat. § 609.04 (1984)?

2. Are appellant's multiple convictions and sentences precluded by Minn.Stat. § 609.035 (1984)?

3. Did the trial court abuse its discretion in sentencing appellant to twice the presumptive sentence for second degree felony murder?

4. Did the trial court abuse its discretion in excluding the prior inconsistent statement of appellant's accomplice?

5. Did the trial court abuse its discretion in limiting the testimony of one of appellant's character witnesses?

6. Did appellant receive a fair trial?

## ANALYSIS

### I.

Appellant was found guilty of one count of second degree felony murder, three counts of burglary, and two counts of aggravated robbery. Appellant argues that two of his convictions and sentences for first degree burglary must be vacated because Minn.Stat. § 609.04 (1984) prohibits multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident; and that all three burglary convictions and one of the aggravated robbery convictions must be vacated under section 609.04 because these offenses were "necessarily proved" if the felony murder charge was proved.

■ (a) The state argues that appellant has waived consideration of these issues on appeal because he did not raise them before the trial court. However, appellant did briefly mention the issue whether defendant's multiple convictions and sentences were prohibited by Minn.Stat. § 609.035, which bars punishment or prosecution for multiple crimes which are part of the same behavioral incident, in a sentencing memorandum submitted to the trial court before sentencing. The application of 609.035 involves the same factual determination as does the application of 609.04, and raising the 609.035 issue before the trial court, but not 609.04, does not waive

appellate review of the 609.04 issue. *State v. Kemp*, 305 N.W.2d 322, 326 (Minn.1981); *see also Ture v. State*, 353 N.W.2d 518, 523 (Minn.1984).

Furthermore, the supreme court has expressly stated that the protection against double punishment provided by section 609.035 cannot be waived. *State v. Mendoza*, 297 N.W.2d 286, 288 (Minn.1980); *State v. White*, 300 Minn. 99, 219 N.W.2d 89 (1974).

■ (b) Minn.Stat. § 609.04, subd. 1 precludes multiple convictions under different sections of a criminal statute for crimes committed during a single behavioral incident. Subdivision 1 provides:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) A lesser degree of the same crime; or

(2) An attempt to commit the crime charged; or

(3) An attempt to commit a lesser degree of the same crime; or

(4) A crime necessarily proved if the crime charged were proved; or

(5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

Under section 609.04, "a defendant cannot be convicted twice for the same offense *against the same victim* on the basis of the same act." *State v. Goodridge*, 352 N.W.2d 384, 389 (Minn.1984) (emphasis added). If the defendant commits the same offense against multiple victims as part of the same behavioral incident, then multiple convictions are permissible. *Mendoza*, 297 N.W.2d at 288 (Minn.1980); *State v. Rieck*, 286 N.W.2d 724, 727 (Minn.1979).

■ Here, the first degree burglary offense listed in Count II lists Y.K., Maude Mindrum, and Laura Mindrum as victims. The first degree burglary offense listed in

Count IV lists Y.K. as the victim. Because Count II names additional victims, the separate convictions for Counts II and IV are permissible under the multiple victim exception. Count III does not name additional victims and this conviction must be vacated under section 609.04.

■ (c) Appellant also argues that all three first degree burglary convictions and the conviction for the aggravated robbery of Maude Mindrum must be vacated under section 609.04 because these offenses are "necessarily proved" if the felony murder charge is proved.

This argument fails for three reasons. First, with regard to the burglary convictions, Minn.Stat. § 609.585 (1984) provides:

A prosecution for and conviction of the crime of burglary is not a bar to conviction of any other crime committed on entering or while in the building entered.

■ Second, as discussed above, two of the burglary offenses involved additional victims and multiple convictions · are therefore permissible under the multiple victim exception to section 609.04. *See Goodridge*, 352 N.W.2d at 389. The third conviction (Count III), which should be vacated on the grounds discussed above, does not involve additional victims and should be vacated for the additional reason that it is a lesser included offense of the felony murder.

■ Third, aggravated robbery is not "necessarily proved" if the felony murder is proved. Appellant argues that, although the complaint lists burglary as the predicate felony, "the record is clear that the predicate felonies were in fact the burglary and the aggravated robbery,"[2] and that his conviction under Count IV of the indictment must therefore be vacated.

■ To determine whether an offense is a lesser included offense, this court "must look at the statutory definitions rather than the facts in a particular case * * *."

---

2. Appellant's claim that the complaint initially filed in this case alleges aggravated robbery as the predicate felony is erroneous. The initial complaint alleges burglary as the predicate felony.

*State v. Gayles,* 327 N.W.2d 1, 3 (Minn. 1982).

 The felony-murder statute under which appellant was convicted provides that one is guilty of murder in the second degree if he

> [c]auses the death of a human being, without the intent to effect the death of any person, while committing or attempting to commit a felony offense * * *.

Minn.Stat. § 609.19(2) (1984). Here, burglary was the predicate felony, and is clearly an included offense of the felony murder. Aggravated robbery is not the predicate felony here, and is therefore not "a crime necessarily proved" if the felony murder charge were proved. Under the statutory definitions, aggravated robbery is also not an included offense of burglary—it is possible to commit burglary without committing aggravated robbery. Defendant's convictions for aggravated robbery are therefore not subject to vacation under 609.04.

## II.

Appellant is, however, entitled to vacation of one of his sentences for aggravated robbery under the provisions of Minn.Stat. § 609.035. Section 609.035 provides:

> Except as provided in section 609.251 and 609.585, if a person's conduct constitutes more than one offense under the laws of this state, he may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

 Appellant's offense of aggravated robbery listed in Count IX clearly arose out of the same behavioral incident as the felony murder, and involved the same victim. The sentence for this offense must

therefore be vacated under section 609.035. The other aggravated robbery offense (Count VIII) involved a different victim and appellant is therefore not entitled to vacation of this sentence.[3]

 Appellant is not entitled to vacation of his remaining burglary sentences because burglary under section 609.585 is expressly exempted from the provisions of section 609.035.

## III.

 Appellant was sentenced to 238 months imprisonment, twice the presumptive sentence, for his conviction of murder in the second degree. Appellant argues that this upward departure was improper because the factors relied upon by the trial court to justify the departure were factors integral to the felony murder conviction. The issue on appeal is whether the trial court clearly abused its discretion in departing from the Guidelines. *State v. Garcia,* 302 N.W.2d 643, 645 (Minn.1981).

 Appellant correctly points out that ordinarily "it is inappropriate for the sentencing court to use as a basis for departure the same facts which are relied upon in determining the presumptive sentence." *State v. Brusven,* 327 N.W.2d 591, 593 (Minn.1982).

 In this case, however, although the victim's age and vulnerability made the crime of felony murder more likely to occur and were causal factors in her death, they are not elements of the offense of felony murder. They are not factors which the legislature considered in determining the elements of felony murder in the second degree, distinguishing it from other degrees of homicide, and were thus not factors in determining the presumptive sentence.

---

**3.** Count IX lists Y.K. and Maude Mindrum as victims. Count VIII lists only Y.K. as victim. Because Count IX lists Y.K. as an additional victim, we could let this sentence stand. However, in that case, Count VIII would have to be vacated under 609.035. Both counts were charged as aggravated robbery (robbery with a dangerous weapon) under Minn.Stat. § 609.245 (1984) and appellant was sentenced to a term of 32 months for each robbery conviction, to be served concurrently. It therefore makes no difference whether the sentence for Count VIII or Count IX is vacated.

In many violent crimes, the vulnerability of the victim will facilitate the commission of the crime or make the crime more likely to occur. Under appellant's argument here, the age or vulnerability of the victim could not be considered in these circumstances.

Furthermore, additional aggravating factors justified the doubling of appellant's sentence. First, the victim, Maude Mindrum, was treated with particular cruelty by the defendant. Appellant forced Mrs. Mindrum out of bed in the middle of the night, demanding that she reveal the location of her money, and forced her to watch his accomplice, Walker, hold a knife to her nurse's throat. These actions go beyond the statutory definition of the predicate offense of burglary, and constitute particular cruelty within the meaning of the guidelines. Minnesota Sentencing Guidelines II.D.2.b(2).

Second, it is clear here that appellant committed the offense of felony murder in a particularly serious way, and his predicate felony of burglary endangered the life, not only of the murder victim, but also the lives of 94-year-old Laura Mindrum and Y.K. It is well-established that a durational departure is justified where the conduct underlying the offense is particularly serious and represents a greater than normal danger to the safety of others. *See, e.g., State v. Back,* 341 N.W.2d 273, 277 (Minn.1983); *State v. Luna,* 320 N.W.2d 87 (Minn.1982); *State v. McClay,* 310 N.W.2d 683 (Minn.1981).

### IV.

At the time of his arrest, John Walker, one of appellant's accomplices, was interrogated by the police. He initially denied any involvement in the burglary, but recanted that statement when he was told that his fingerprints had been found at the scene. In his subsequent statement, Walker implicated himself, as well as Westberry, appellant, and the unidentified man named "Junior," in the burglary. At his trial, Walker repudiated this second statement and claimed the police manufactured the story.

Defense counsel was aware that Walker would deny making the second statement and would testify that he never entered the house. Before Walker was called as a defense witness, the court granted the state's motion in limine to preclude the defense from using Walker's recanted statement to impeach him. Appellant now argues that the prior inconsistent statement should have been admitted as substantive evidence or, in the alternative, for impeachment purposes. This argument is without merit.

Minn.R.Evid. 801(d)(1)(A) provides that prior inconsistent statements are admissible for substantive purposes only if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement" and the statement "was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *." Walker's statement fails to meet the oath requirement and was therefore properly excluded as substantive evidence.

Walker's statement was also properly excluded as impeachment evidence. Although Minn.R.Evid. 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him," it is clear from the record that the primary reason the defense called Walker was to get the recanted statement in front of the jury. A party may not misuse Rule 607 to introduce hearsay which is otherwise inadmissible in the guise of impeachment. *State v. Dexter,* 269 N.W.2d 721, 721–22 (Minn.1978).

### V.

Appellant called his girlfriend as a character witness. She testified that the offenses appellant was charged with were inconsistent with his character. However, the court sustained the state's objection when the girlfriend was asked the following question:

Can you tell us what your reaction was when Mr. Hodges was involved in all of this?

Appellant asserts that this ruling violated his sixth amendment right to call and introduce the testimony of witnesses on his own behalf. The state did not state the grounds for its objection, but argues on appeal that to allow a character witness to give her opinion on the ultimate issue of defendant's guilt invades the province of the jury.

The question is not objectionable on these grounds. Minn.R.Evid. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." This rule applies to lay as well as expert witnesses. *Id.,* Committee Comment.

The state also argues that the probative value of the reaction of appellant's girlfriend to his being charged in this case is outweighed by a substantial danger of unfair prejudice. While there appears to be little probative value to this evidence, it is also difficult to see a substantial danger of unfair prejudice in allowing it in.

 The question asked goes directly to the issue of whether, in appellant's girlfriend's opinion, the crimes he was charged with are in conformity with his alleged character trait of peacefulness. Such evidence is properly admissible under Rule 404(a)(1). However, "[r]ulings on the admissibility of evidence are left to the sound discretion of the trial court, and its determination controls 'unless practical justice requires otherwise.'" *Colby v. Gibbons,* 276 N.W.2d 170, 175 (Minn.1979) (citations omitted). Here, in light of the very slight probative value of this evidence and the strong evidence of defendant's guilt, the trial court's ruling cannot be characterized as an abuse of discretion.

### VI.

Defendant also argues that the trial court abused its discretion in admitting hearsay evidence regarding the discovery of the wallet of one of the victims; that the trial court erred in refusing to instruct the jury on the lesser included offense of burglary in the second degree and the defense of withdrawal; and that the evidence was insufficient to sustain his convictions of aggravated robbery and murder in the second degree. We have carefully considered all of these arguments and conclude that none have any merit.

### DECISION

Appellant's conviction and sentence under Count III (first degree burglary with a dangerous weapon) and Count IX (aggravated robbery with a dangerous weapon) are vacated. Appellant's sentence of 238 months for second degree felony murder is affirmed. On all other matters, the trial court is affirmed.

Affirmed as modified.