**STATE of Minnesota, Respondent,**

v.

**King Buachee LEE, Appellant.**

**No. C9–91–560.**

Court of Appeals of Minnesota.

Feb. 4, 1992.

Review Granted April 13, 1992.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Clayton M. Robinson, Asst. Ramsey County Atty., St. Paul, for respondent.

Philip G. Villaume, Bloomington, Peter N. Thompson, St. Paul, for appellant.

Considered and decided by CRIPPEN, P.J., and SHORT and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

A jury convicted appellant King Buachee Lee on three counts of third degree criminal sexual conduct as defined by Minn.Stat. § 609.344, subd. 1(c) (1990) (penetration with force). Lee appeals his convictions, arguing the trial court violated his sixth amendment rights by erroneously applying the marital privilege to exclude all testimony by the victims' husbands. Lee also contends the trial court abused its discretion in admitting testimony concerning a similar but unrelated criminal prosecution.

## FACTS

Lee immigrated from Laos in 1976, and has worked part-time as a Hmong technical tutor at St. Paul Technical Vocational Institute ("TVI"). The two complainants immigrated from Laos in 1981 and 1988 respectively. They are both married and sought employment counseling through TVI.

The first complainant testified that on March 20, 1990, under the pretense of a job application, Lee convinced her to accompany him to a motel where Lee forced her to engage in sexual intercourse. During the assault she allegedly sustained a bruise on her cheek. Two days later, as a result of threats against her and her family, the complainant met Lee in a parking lot where Lee beat her on the thighs and then raped her. Lee claimed both these sexual contacts were consensual.

The first complainant testified that she told her husband X.Y., in the presence of

her family, about the two incidents approximately three weeks after they occurred. The complainant did not report these incidents to the police, however, until May 16, 1990, when police responded to a domestic disturbance at her home. In an agitated state and crying, X.Y. approached one of the responding police officers and said, "I just found out my wife committed an adultery." Later, X.Y. allegedly wrote a letter in which he said his wife "had an affair with King Lee." X.Y.'s wife gave the police a copy of this letter.

The second complainant testified that on March 26, 1990, Lee drove her to his garage where he beat her on the shoulders and thighs and raped her. This incident also arose during a venture to make job applications. A witness who saw this complainant immediately after this incident described her as being very upset. Lee claimed this sexual contact was also consensual.

The second complainant testified that several days after the incident she felt numb and could not walk well and that she was depressed and unable to care for her children. On May 1, 1990, the woman told both her husband K.T. and her mother about the sexual assault. That same night, K.T. spoke with Lee in a telephone conversation which Lee recorded. K.T. stated that when he beat his wife he did not know "she was having an affair" with Lee. On May 2, 1990, K.T.'s wife filed a rape report with the police. That same day, Dr. Lammon examined this complainant and found a large bruise on her left hip and superficial bruising on her shoulders. Dr. Lammon testified that these bruises could have occurred on March 26, 1990, or up to two weeks later.

The court excluded X.Y.'s and K.T.'s testimony based on the marital testimonial privilege. The court allowed testimony from Assistant County Attorney Jeanne Schleh concerning a similar but unrelated criminal prosecution.

The jury convicted Lee on three counts of third degree criminal sexual but acquitted him on two counts of first degree criminal sexual conduct as defined by Minn.Stat.

§ 609.342, subd. 1(c) (1990) (causing reasonable fear of imminent great bodily harm) and one count of first degree criminal sexual conduct as defined by Minn.Stat. § 609.-342, subd. 1(e)(i) (1990) (use of force causing personal injury). The court denied Lee's motion for a new trial and sentenced Lee to a 212 month prison term. Lee appeals his convictions.

## ISSUES

1. Did the trial court's exclusion of all testimony by the victims' husbands violate Lee's sixth amendment rights?

2. Did the trial court abuse its discretion in admitting Schleh's testimony concerning a similar but unrelated criminal prosecution?

## ANALYSIS

### I.

■ Lee contends the trial court violated his sixth amendment rights when it erroneously applied the marital privilege statute to exclude testimony by the complainants' husbands.

■ To establish a violation of the sixth amendment right to compulsory process, a defendant must show (1) testimony was improperly excluded and (2) the excluded testimony would have been material and favorable to the defense. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). Once a defendant establishes a constitutional violation, the burden of proof shifts to the state to show that the violation is harmless beyond a reasonable doubt. *State v. Conklin*, 444 N.W.2d 268, 275 (Minn.1989) (citing *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967)).

Minn.Stat. § 595.02, subd. 1(a) (1990) creates two distinct marital privileges: (1) a testimonial privilege which allows parties to prevent their spouse from testifying for or against them during the course of their marriage, and (2) a communications privilege which allows any person, at any time, to prevent their spouse, or their former

spouse, from disclosing interspousal communications.

At trial, the court relied solely on the testimonial privilege to exclude the husbands' testimony. After trial, the court recognized that a victim witness may not assert the testimonial privilege in a criminal action. *See State v. Leecy*, 294 N.W.2d 280, 283 (Minn.1980). The trial court nevertheless denied Lee's motion for new trial asserting that the husbands' testimony was properly excluded under the marital communications privilege.[1]

■ The communications privilege applies to all interspousal communications, including conversations that are "not confidential in their nature." *Leppla v. Minnesota Tribune Co.*, 35 Minn. 310, 311–12, 29 N.W. 127, 128 (1886); *see* 11 P. Thompson, *Minnesota Practice* § 501.03, at 168 (1979). Regardless of their confidential or nonconfidential nature, the communications must be interspousal (made by one spouse to the other spouse). Minn.Stat. § 595.02, subd. 1(a). Statements made to both spouse and family are not privileged interspousal communications. *Leecy*, 294 N.W.2d at 283; Thompson, *supra* § 501.03, at 171. The communications privilege is also limited to written or oral interspousal communications and nonverbal assertive conduct. *State v. Hannuksela*, 452 N.W.2d 668, 676 (Minn.1990).

Both complainants testified their statements regarding the sexual assaults were made to both their husbands and to relatives. As a result, the statements are not privileged marital communications. Likewise, both X.Y.'s conversation with Officer Kong and K.T.'s conversation with Lee are not privileged because they are not interspousal communications. *State v. Schifsky*, 243 Minn. 533, 539, 69 N.W.2d 89, 94 (1955). K.T.'s and X.Y.'s observations of the victims' bruises fall outside the communications privilege because they are neither interspousal communications nor nonverbal assertive conduct. The trial court erred, therefore, in excluding the husbands' testimony.[2]

■ Even assuming arguendo that one of the two marital privileges applied, the social policy underlying these privileges is insufficient to justify the wholesale exclusion of exculpatory evidence in a criminal case. *Leecy*, 294 N.W.2d at 283 (marital privilege must yield to a defendant's sixth amendment right to compulsory process) (citing Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 170–77 (1974)).

Numerous indications in the record suggest the husbands' testimony would have been both material and favorable to Lee's defense. The record indicates that: (1) the victims described the alleged sexual assaults to their husbands in the presence of others; (2) X.Y. told Officer Kong that he "just found out [his] wife committed adultery"; (3) X.Y. allegedly wrote a letter in which he said his wife "had an affair" with Lee; and (4) in a tape-recorded telephone conversation between Lee and K.T., K.T. admitted beating his wife before he knew "she was having an affair" with Lee.[3] X.Y.'s and K.T.'s testimony on these subjects is material and favorable to Lee's consent defense, to the source and timing of the victims' bruises, and to the issue of

1. The trial court's reliance on Minn.R.Evid. 412 (rape shield) is misplaced. X.Y.'s and K.T.'s testimony does not relate to the victims' previous sexual conduct. In addition, Lee raised both the consent defense and the possibility of fabrication. *See Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988).

2. Unlike the testimonial privilege which precludes all testimony by the witness spouse, the communications privilege only bars testimony regarding specific interspousal communications. Even if the complainants' statements had been made solely to their husbands, Lee was entitled to call the husbands to elicit testimony concerning their observations of the complainants' bruises because the timing and sources of these bruises are inextricably linked to the questions of victim motivation and possible fabrication. *See State v. Caswell*, 320 N.W.2d 417, 419 (Minn.1982).

3. Where the substance of a husband's testimony is unknown, there is no basis for holding that the exclusion of evidence is reversible error. *State v. Gerring*, 378 N.W.2d 94, 95–96 (Minn. App.1985). However, we note that this record, unlike *Gerring*, reveals the substance of the husbands' potential testimony.

possible fabrication motives. *See Olden,* 488 U.S. at 231, 109 S.Ct. at 483 (rape victim's living arrangement with boyfriend relevant and material to issue of fabrication); *Caswell,* 320 N.W.2d at 419.

Lee has established that his sixth amendment rights were violated when the trial court improperly excluded X.Y.'s and K.T.'s testimony which would have been both material and favorable to his defense. To preclude reversal, the state must show that this violation was harmless beyond a reasonable doubt.

A constitutional violation is harmless beyond a reasonable doubt if the trial court's error did not contribute to the verdict obtained. *Conklin,* 444 N.W.2d at 275. Improper exclusion of evidence under the marital privilege statute is harmless where the evidence is admitted by other witnesses, there is other credible evidence, and there is overwhelming evidence of a defendant's guilt. *Leecy,* 294 N.W.2d at 283–84.

The husbands' statements regarding the alleged affairs were not admitted through any witnesses. While K.T.'s statement that he beat his wife, the second complainant, came in through Lee, the effect of this testimony is questionable. Unlike the independent witnesses in *Leecy,* Lee's strong interest in the case most likely affected his credibility. *See id.* at 283. Dr. Lammon's testimony concerning this complainant's bruises was, at best, indeterminate (bruises occurred during a two-week period). Evidence of Lee's guilt is not overwhelming; instead, there is conflicting testimony by a limited number of interested witnesses.

The state relies on X.Y.'s and K.T.'s post-trial affidavits which suggest they may recant their prior statements regarding the alleged affairs and beatings. These post-trial affidavits, however, do not demonstrate beyond a reasonable doubt that X.Y.

and K.T. will recant when examined at trial.[4]

The jury's acquittal of Lee on all three counts of first-degree criminal sexual conduct (imminent bodily harm/personal injury) indicates the jury was influenced by the evidence concerning the source and timing of the complainants' bruises. The source and timing of the bruises not only goes to the issue of offense degree, but also to the issues of consent and possible fabrication motives. The state has failed to prove beyond a reasonable doubt that the exclusion of X.Y.'s and K.T.'s testimony concerning both the bruises and the alleged affairs did not contribute to the jury verdict; therefore, the improper exclusion of material and favorable testimony by the complainants' husbands was not harmless error.

## II.

■ Lee argues the trial court abused its discretion in admitting Schleh's testimony concerning a similar but unrelated criminal prosecution.

■ The state's comparison of the charges against an accused to the charges in unrelated and notorious criminal prosecutions is improper and highly prejudicial. *United States v. Phillips,* 476 F.2d 538, 538–39 (D.C.Cir.1973); *see also United States v. Thiel,* 619 F.2d 778, 782 (8th Cir.1980), *cert. denied,* 449 U.S. 856, 101 S.Ct. 152, 66 L.Ed.2d 70 (1980). If reasonable doubt exists as to whether the improper comparison contributed to the jury verdict, reversal is required. *State v. Blasus,* 445 N.W.2d 535, 541 (Minn.1989) (questioning expert witness about participation in notorious and highly publicized prosecutions required reversal in close factual case).

---

**4.** In the event X.Y. and K.T. recant on all subjects, Lee's impeachment attempts may by affected by *State v. Hodges,* 384 N.W.2d 175, 184 (Minn.App.1986) (inadmissible hearsay may not be admitted under the guise of impeachment), *modified on other grounds,* 386 N.W.2d 709 (Minn.1986). This issue is not properly before this court. We note that it must be determined whether X.Y.'s statement regarding adultery is admissible hearsay under the excited utterance exception and, therefore, not subject to the *Hodges* rule.

Likewise it is premature to address X.Y.'s and K.T.'s possible fifth amendment rights. It must be determined whether K.T. waived his fifth amendment right by admitting in his post-trial affidavit that he beat his wife.

Schleh compared the charges against Lee to those in a completed criminal sexual conduct prosecution involving a Hmong man who was in a position of power, who promised to help a married and unsophisticated Hmong refugee woman, and who used threats to achieve forcible penetration, and a victim who delayed 48 hours before reporting the rape.

The prejudice resulting from this testimony is even greater than the prejudice found in *Blasus* because the notorious prosecution taints the defendant himself, not just a defense witness. *See id.* (associating an expert witness with notorious and highly publicized prosecutions). Like *Spreigl* evidence, testimony of an unrelated prosecution has a tremendous potential for unfair prejudice. *See State v. Slowinski*, 450 N.W.2d 107, 113–14 (Minn.1990). However, unlike *Spreigl* evidence, the testimony in this case lacks probative value because it does not involve the defendant. Any probative value is necessarily based on improper racial and cultural stereotyping.[5] The admission of this testimony was, therefore, unusually prejudicial[6] and requires reversal.[7]

Because we must reverse and remand for a new trial, we do not reach the issues concerning rape reporting testimony, interpreter qualifications, ineffective assistance of counsel, and sentencing.

## DECISION

The trial court erred in ruling the marital privilege applied to more than the interspousal communications between the complainants and their husbands. In addition, Lee's sixth amendment rights supersede this limited privilege because the communications are relevant and material to his defense.

The trial court also erred in admitting testimony which compared the facts and circumstances of Lee's case with those of another successful criminal prosecution.

Reversed and remanded.

---

5. Both parties are cautioned against using cultural stereotyping to explain either rape reporting or motives for fabrication. Only a sensitive exploration of cultural differences which avoids broad generalizations would be proper.

6. The trial court's conclusion that Lee was not prejudiced because the county attorney did not testify as to the success of the prior prosecution relies on a hyper-technical view of the record. Comparisons to a known incident of rape in

which the witness states that the prosecution is "completed" and repeatedly refers to the woman as "the victim" implies a successful prosecution and is extremely prejudicial.

7. We do not reach the conflict of interest issue under Minn.R.Prof.Conduct 3.7, but we note that it is troublesome that Schleh worked on the charging phase of this case.