STATE of Minnesota, Respondent,

v.

Willard Neils BETTIN, Appellant.

No. 50143.

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender, and Phebe S. Haugen, Sp. Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert F. Carolan, County Atty., and Mark Nathan Lystig, Asst. County Atty., Hastings, for respondent.

KELLY, Justice.

Defendant was acquitted by a district court jury of two counts of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(c) & (e)(i) (1978) but was found guilty of a lesser-included offense of criminal sexual conduct in the third degree, Minn.Stat. § 609.344(c) (1978) (penetration accomplished by use of force or coercion). The trial court sentenced defendant to a maximum indeterminate prison term of 10 years. On this appeal from judgment of conviction defendant contends (1) that the evidence that force or coercion was used was legally insufficient, (2) that the trial court prejudicially erred in denying a defense motion to prohibit the state from using a prior rape conviction to impeach defendant if he testified, and (3) the trial court erred in denying a mistrial motion based on a claim by defense counsel that the jury may have seen defendant handcuffed to a witness and that this witness, when testifying for the state about his rela-

tionship with defendant and defendant's activities on the day of the incident, was dressed in distinctive prison attire. We affirm.

Defendant, who was 50 years old at the time of this offense, previously has been an appellant in this court in a criminal case. Specifically, in *State v. Bettin*, 309 Minn. 578, 244 N.W.2d 652 (1976), we affirmed defendant's conviction and 30-year sentence for an August 1974 aggravated rape of an 83-year-old woman friend of his parents who lived in a different unit of the same apartment complex for older people in which his parents lived. The incident with which we are concerned occurred on October 25, 1978, when defendant was out of prison as part of a work-release program. The complainant, a 24-year-old married woman, had met defendant through a woman friend with whom defendant lived in South St. Paul, and complainant's husband befriended defendant.

Complainant had a 12:30 to 1:30 lunch hour on her clerical job in South St. Paul and she usually used this time to drive home and eat and also let her dog out of the house. Normally punctual, complainant did not return to work on October 25 until after 2 p.m. and she immediately broke down and told a close friend and fellow employee that she "was raped by Willie," i. e., defendant. This friend, who observed red marks on complainant's neck, where complainant had been choked, called the police, who came and talked with complainant. Complainant told the police that as she was driving home defendant, standing at an intersection, had yelled at her, got her to stop, and insisted that he had to talk with her. She stated that she was reluctant to get involved with him but acquiesced and took him with her, thinking that they would talk while she ate. She stated that it was at home that defendant grabbed her by the throat, choked her and forced her to have intercourse with him. She stated that after defendant had finished, she agreed to give him a ride to a certain intersection as she drove back to work.

While being driven to the hospital complainant saw defendant standing by a bus stop and told the officer, who stopped and arrested defendant before transferring him to the custody of other officers who responded to a call for assistance. The examination of complainant at the hospital showed the presence of both semen and sperm in her vagina. The doctor also noted the presence of red marks on her neck, which were consistent with her having been choked.

Defendant was given a *Miranda* warning and questioned at the station. He first claimed physical impossibility. He also claimed that he had not seen complainant in two to three weeks. Defendant's blood alcohol content at the time was .11% by weight.

Later in the day defendant, at his insistance, gave a longer statement, which was recorded and which he later signed, in which he gave the full story of his relationship with complainant and her husband and in which he admitted having sexual intercourse with complainant but claimed it was her idea and that she had helped him overcome his physical difficulty in having intercourse.

Complainant at trial elaborated on her statement to the police but her testimony, like the testimony of all the witnesses for the state, was "sanitized" so as not to refer to defendant's prior criminal record, even if it meant excluding relevant evidence. Thus, the jury did not get a true picture of how complainant came to know defendant, only that her husband had helped defendant in some way.

Defense counsel, who conducted a vigorous defense, sought and obtained permission to cross-examine complainant about her marital problems, specifically the fact that she had arguments with her husband. He also obtained permission to elicit evidence relating to a prior incident in which complainant had claimed that a man had attempted to rape her. This evidence related to complainant's relationship with her husband's father's second wife's son. This man, who lives in West Virginia, testified

that the attempted rape claim had been a false one, that intercourse had occurred and that it was consensual.

Defense counsel also sought an order prohibiting the prosecutor from impeaching defendant, if he testified, with any of his prior convictions, specifically, a 1948 one for robbery, a 1973 one for breaking and entering, and the 1974 one for aggravated rape. The prosecutor stated that he did not wish to use the 1948 or the 1973 convictions but that he wanted to use the 1974 one for aggravated rape. The trial court, after carefully considering the matter, refused to prohibit use of the aggravated rape conviction. Apparently as a result of this order, defendant decided not to testify. However, the defendant's version of what happened did get before the jury by way of the expurgated or sanitized version of defendant's tape-recorded and transcribed statement to the police in which he claimed consent.

■ There is no merit to defendant's contention that the evidence was legally insufficient to show that he used "force or coercion" to accomplish penetration. Complainant promptly complained, she was visibly upset, there were red marks on her neck consistent with her having been choked, the tests showed the presence of semen and sperms, and she consistently insisted that defendant had raped her. Defendant first claimed impossibility and alibi; it was only after thinking about it that he claimed consent. The only motive that he could think of for her lying was that she needed an excuse for having been late in getting back to work from lunch.

■ Similarly, the record does not support defendant's claim that the jury saw defendant handcuffed to the witness-friend or that it could infer that this witness' clothes were prison-issued clothes.

The main issue is the contention on appeal that the trial court prejudicially erred in refusing to prohibit the use of the 1974 aggravated rape conviction.

■ The applicable rule is R. 609, R.Evid., which provides in relevant part as follows:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

■ This rule divides convictions into two different types: convictions directly involving "dishonesty or false statement," and other crimes "punishable by death or imprisonment in excess of one year [if] the probative value of admitting the evidence outweighs its prejudicial effect." Crimes directly involving dishonesty or false statement are automatically admissible without regard to the seriousness of the punishment and without any balancing of probative value against prejudice being required. The prior conviction in this case was for a crime not directly involving dishonesty or false statement; therefore, the conviction was admissible for impeachment purposes only if the probative value of admitting the conviction outweighed its prejudicial effect.

In *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978), in reversing a conviction because of the improper denial of a motion to limit use of prior convictions for impeachment purposes, we listed five key factors which the trial courts should consider in determining whether to restrict the use of a prior conviction other than one directly involving dishonesty or false statement: (a) the impeachment value of the prior conviction, (b) the date of the conviction and defendant's subsequent history, (c) the similarity of the prior conviction with the charged crime, (d) the importance of the defendant's testimony, and (e) the centrality of the credibility issue.

(a) In this case the prior conviction in question was one for aggravated rape, in other words, a conviction having much less bearing on veracity or honesty than do many other crimes.

(b) The prior conviction of aggravated rape was four years old but defendant was in prison in the interim between the two offenses so it would seem that the offense had not lost any relevance by the passage of time.

(c) One factor weighing against admission of the prior conviction was the fact that prior crime was basically the same crime with which defendant was charged. *See State v. Leecy*, 294 N.W.2d 280, filed May 16, 1980 (holding that admission of 8-year-old aggravated assault conviction to impeach a defendant charged with aggravated assault was error, although harmless). The danger when the past crime is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively rather than merely for impeachment purposes.

(d) As Judge (now Chief Justice) Burger stated in the widely-cited case of *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), a judge might exclude even a relevant prior conviction if he determines that its admission for impeachment purposes will cause defendant not to testify and if it is more important in the case to have the jury hear the defendant's version of the case. Here the denial of the motion apparently caused defendant not to testify, but at least defendant's version of what happened did get before the jury when his expurgated transcribed statement was admitted.

(e) Finally, the general view is that if the defendant's credibility is the central issue in the case—that is, if the issue for the jury narrows to a choice between defendant's credibility and that of one other person—then a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater. Here, through the sanitization of the record, the jury really got a false impression of the nature of the relationship complainant and her husband had with defendant. If defendant had testified and not been impeached by his aggravated rape conviction, the court would have been carrying that process one step further. In view of the strong attack on complainant's credibility and the fact that only she and defendant were witnesses to what happened, it is fair to conclude that there was a strong need for the evidence for impeachment purposes.

One fact not mentioned by either party at any time is that the evidence of the prior rape (and not just the fact of conviction) arguably might have been relevant *Spreigl* evidence bearing on the issue of consent. While the offenses were separated by about four years, there was a close relationship in time because defendant was in prison in the interval. The offenses were very similar in a number of ways. Both victims were women defendant had met through friends or relatives. In both cases defendant used this friendship to gain entry to the victim's residence. Both cases involved use of force or coercion.

However, we do not base our decision on this ground, because we are satisfied that this case is indistinguishable from *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979), where we upheld, as not a clear abuse of discretion, an order refusing to prohibit use of a prior sex conviction for impeachment purposes under circumstances similar to those in this case.

The only other issue is one raised by the state in its brief. Specifically, the state requests that we consider "correcting" defendant's sentence by relying on Minn.Stat. § 609.346 (1976) and changing it from an indeterminate term with no minimum to a term with a 3-year minimum because this is defendant's second sexual offense. This issue is not properly before us.

Affirmed.

OTIS, Justice (dissenting).

I cannot agree with the ruling that evidence of appellant's 1974 conviction for rape would have been admissible as impeachment because its probative value outweighed its prejudicial effect.[1] On the contrary, the potential prejudicial effect of this evidence grossly outweighs its probative value. Furthermore, it is clear that the possible introduction of this evidence provoked appellant's decision not to testify.

In a case such as this, where the only issue was consent, I submit that the appellant's failure to take the stand was, in the eyes of the jury, tantamount to an admission of guilt.

The appellant was well known to complainant and her husband. They had given him work to do in their residence. It is undisputed that on October 25, 1978, as complainant was driving home in South St. Paul from her place of employment at lunchtime, appellant, who was on foot, waved to her and she stopped to pick him up. At his request she took him to her home so that he could talk to her. Once there the statement given to the police by appellant and the testimony of the complainant are at total variance as to what occurred. Appellant sought to prove that he was seduced by the complainant and introduced evidence that she had seduced a friend on a prior occasion. She testified that she consented to intercourse only after appellant seized her by the throat and choked her.

While it is true that appellant's version of these events was presented to the jury in the form of a statement to the authorities, it is equally true that in defending himself he was effectively denied his fundamental right to present his case to the jury from the witness stand. The court had denied his motion to exclude evidence of his prior offense if he testified on his own behalf, and the devastating effect of that ruling did not escape him.

This is not a case where the evidence of guilt is strong as in *State v. Leecy*, 294 N.W.2d 280 (Minn.1980), filed May 16, 1980. There a majority of the court was careful to point out that *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979) had not overruled *State v. Jones*, 271 N.W.2d 534 (Minn.1978). In weighing the probative value against the prejudicial effect of introducing prior offenses, the trial court must still consider the impeachment value, the similarity of the crimes charged and the prior convictions, the importance of defendant's testimony, and the centrality of the credibility issue.

In *Gordon v. United States*, 383 F.2d 936, 940–41 & n. 11 (D.C. Cir. 1967), the federal court speaking through Judge Burger, now the Chief Justice, cautioned against the use of prior records which have no direct bearing on honesty and veracity, such as acts of violence which do not involve deceit, fraud, cheating, or larceny. "A special and even more difficult problem arises" the court noted "when the prior conviction is for the same or substantially the same conduct for which the accused is on trial." This is because of what the court describes as "the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" Such convictions for the same

1. The applicable rule, Minn.R.Evid. 609, provides in part:

(a) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

548

crime should be admitted sparingly, the court stated. Finally, the federal court stressed the necessity for the exclusion of a prior conviction where, although relevant to credibility, in the court's opinion "it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." The judge must then "consider whether the defendant's testimony is so important that he should not be forced to elect between staying silent—risking prejudice due to the jury's going without one version of the facts—and testifying—risking prejudice through exposure of his criminal past."

The appellant was here convicted of criminal sexual conduct in the third-degree. His prior conviction was for rape. However reprehensible and degrading that previous offense may have been, it did not involve fraud, perjury, deceit, or dishonesty. Except where it is permissible under Rule 609, appellant does not put his character in issue by testifying on his own behalf, and it could not have been attacked under any circumstances unless he had taken the stand and had introduced evidence of his good character. Such is the time-honored common law rule. Our Rule 609 is an exception to that rule, and, as the federal court suggests, it should be applied sparingly, with restraint, to preserve and not to erode the right of the accused to have his day in court and to plead his case before a jury unfettered by the stigma of an unrelated offense for which he has already paid his debt to society.

I would reverse and grant a new trial at which the prior record of conviction is excluded.

ROGOSHESKE, Justice.
I join in the dissent of Mr. Justice Otis.

WAHL, Justice.
I join in the dissent of Mr. Justice Otis.