Sherry Lynn VAUGHN and Ramsey County, Respondent,

v.

**Edward LOVE, Appellant.**

No. C8–83–1816.

Court of Appeals of Minnesota.

April 17, 1984.

Petition for Permission to Appeal Denied July 26, 1984.

William E. Falvey, Chief Public Defender, Ellen Seesel, Asst. Ramsey County Public Defender, St. Paul, for appellant.

Tom Foley, Ramsey County Atty., Karen Kushner, Asst. Ramsey County Atty., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Edward Love appeals from a civil judgment determining him to be the father of a child born to Sherry Lynn Vaughn. The trial court made three evidentiary rulings, which he claims denied him a fair trial. The trial court's rulings involved impeachment of the defendant as a witness by a showing of prior conviction of crime, prohibition of use of a videotaped cross examination of the court-appointed expert in an unrelated case, and suppression of the testimony of three undisclosed witnesses. We affirm.

## ISSUES

1. Did the trial court abuse its discretion in refusing defendant's motion to restrict the prosecution's impeachment by prior conviction?

2. Did the trial court's refusal to permit a videotaped cross examination of the court-appointed expert in an unrelated case impermissibly abridge defendant's right of cross examination?

3. Was the trial court's suppression of the testimony of undisclosed witnesses an abuse of discretion?

## FACTS

In late 1979, respondent Sherry Lynn Vaughn was 17 years old and living with her mother. She and appellant, a 28-year-old married man with four children, were introduced to each other by respondent's mother at her home. Respondent and appellant saw each other five or six times between December 1979 and March 1980. Appellant and respondent usually "just drove around" on these occasions.

Appellant and Respondent went out in early March 1980. She testified that he was to pick her up at 6:30 p.m. to take her to the Red Lobster restaurant, but did not arrive until 10:00 p.m. Finding the restaurant closed, they went to a Dairy Queen. They then drove to appellant's brother's apartment on South Robert Street, arriving around 11:00 p.m.

Respondent testified that shortly after she and appellant arrived, appellant's brother said he was hungry. Appellant allegedly gave his brother his car keys and some money and told him to get something to eat. Respondent testified that she and appellant had intercourse for the first and only time during the brother's absence. Respondent testified that she had intercourse with no one other than appellant in February, March or April of 1980. Her pregnancy was confirmed in April 1980.

Respondent's mother dialed appellant's telephone number and had respondent talk to appellant. Appellant told respondent he was sterile and would be over to talk to her. Appellant did visit respondent and claimed he was sterile, but he did not deny he had had intercourse with her.

On December 25, 1980, respondent gave birth to a full-term baby boy. Appellant was not named as the father on the birth certificate. He did not visit respondent while she was in the hospital, nor did he send her money or presents.

Appellant visited respondent in October 1981 to talk about a paternity suit. She testified that appellant offered to pay support directly to her. Appellant allegedly held the baby in the presence of respondent, her mother and her sister, and admitted it was his child.

Appellant's brother, Marvin, testified that he remained in the company of Sherry and his brother throughout the evening in question, and that they could not have had physical contact without his knowledge.

Appellant did not testify because, he claims, the trial court's ruling that his testimony could be impeached by a showing of his prior conviction of intrafamilial sexual abuse of his 12-year-old daughter, precluded that option.

Dr. Herbert Polesky, a hematologist, was appointed as the court's expert. After conducting blood tests, he concluded that there was a 99.946 percent likelihood that appellant was the father of the child. Appellant's counsel sought to introduce a videotaped cross examination of Dr. Polesky in an unrelated paternity case, but the tape was ruled inadmissible.

During his defense case, appellant's counsel attempted to call three witnesses whose names were not disclosed in answers to plaintiff's interrogatories. Appellant claimed they were "rebuttal" witnesses, the need for whose testimony could not be perceived until the close of the plaintiff's case, but the trial court refused to allow their testimony.

## DISCUSSION

### I

■ The fairness of impeachment through the use of prior convictions has vexed the bench and bar for many years. The present rule places primary reliance on the discretion of the trial court. The rule does not explicitly distinguish between civil and criminal cases. Minnesota Rule of Evidence 609(a) provides:

> General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, * * *.

The Supreme Court's decisions under Minn.Stat. § 595.07, this rule's predecessor, created confusion because of particular concern that the substantial rights of the criminal defendant might be compromised when he is deterred from testifying by a fear that he will be cross examined about his prior convictions. It was concern for the dilemma of the criminal defendant that led to Rule 609(a) and the transfer of discretion about whether prior convictions would be used from the prosecuting attorney to the trial judge. *State v. Jones*, 271 N.W.2d 534, 537 (Minn.1978). Now, the trial court's ruling will be sustained unless a clear abuse of discretion is shown. *State v. Brouillette*, 286 N.W.2d 702, 707 (Minn. 1979).

■ The Minnesota Supreme Court has developed a balancing approach to aid the trial court in its decision on whether to admit prior convictions for impeachment purposes. The factors to be considered are:

(1) the impeachment value of the prior crime,

(2) the date of the conviction and the defendant's subsequent history,

(3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach),

(4) the importance of the defendant's testimony, and

(5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538.

In *Jones*, the Minnesota Supreme Court held that the defendant was deprived of a fair trial because he was deterred from testifying "by the threat of admission of prior convictions which were not only stale but highly prejudicial and irrelevant to credibility." *Id.* There, defense counsel asked the trial court to allow cross examination of the defendant only on the most recent of his several convictions. The court denied the motion. "In doing so, the court stated again that he [the trial judge] felt he *did not have any discretion* in the matter." *Id.* at 536 (emphasis supplied). The Supreme Court acknowledged that Rule 609 was not in effect at the time *Jones* was tried. "If Rule 609 had been in effect, then the trial court would have had the discretion to restrict the prosecutor's use of the prior convictions * * *." *Id.* at 537.

The five factors as applied to this case come out as follows:

*(1) The impeachment value of the prior crime*

The conviction for intrafamilial sexual abuse has little, if any, bearing on veracity.

*(2) The date of the conviction and the defendant's subsequent history*

The conviction was only one year old at the time of trial, and was not stale as in *Jones.* This case is similar to *Brouillette,* 286 N.W.2d 702. The conviction in that case was also one year old. The subsequent history of appellant is that he has been in Stillwater Penitentiary.

*(3) The similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach)*

This is a civil case, so there is no "charged crime." Intrafamilial sexual abuse is, of course, different from a paternity suit. The defendant was convicted of sexual penetration of his 12-year-old daughter. In a paternity suit, the only issue is, "is defendant the father?" If the cases are seen as similar, the danger is that the jury will use the evidence substantively rather than for impeachment. *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980).

*(4) The importance of defendant's testimony*

■ If the trial court's ruling allowing admissibility of prior convictions causes the defendant not to testify and it is important for the jury to hear the defendant's version, the court may exclude the evidence. *Id.* But here, a version other than the respondent's was presented to the jury through the testimony of appellant's brother.

*(5) The centrality of the credibility issue*

■ "[I]f the issue for the jury narrows to a choice between defendant's credibility and that of one other person—then a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." *Id.* The trial judge stated that the plaintiff's credibility and the defendant's credibility were the real issues in the case.

Appellant claims there is a greater danger of prejudice when a prior conviction is used to impeach in a civil action than in a criminal action. However, Rule 609 was a new witness protection adopted with the criminal defendant in mind. The committee comment does not mention its concern for the civil defendant, but does discuss the criminal defendant. "The potential for prejudice is greater when the *accused* in a *criminal case* is impeached by past crimes that only indirectly speak to his character for truthfulness or untruthfulness." Rule 609(a), Minn.R.Evid., Committee Comment (1977) (emphasis supplied).

The nature of the prior crime does have potential for great prejudice, but in view of the civil nature of the case, the testimony of appellant's brother, and the great weight of the scientific testimony, it cannot be said that the trial court abused its discretion.

II

■ The Minnesota Supreme Court encourages the use of blood tests as the most accurate and efficient means to determine paternity. *Benson v. LaBatte,* 288 N.W.2d 684, 686 (Minn.1979). The failure to submit to a blood test is admissible at trial. Minn. Stat. § 257.62, subd. 4 (1980).

■ Dr. Herbert Polesky of the War Memorial Blood Bank is a court-appointed expert in many paternity cases. He is unable to testify at every paternity trial for which he is an expert. By agreement, his examination was videotaped prior to trial. The videotapes were shown at trial. The first videotape was a foundation tape in which he is examined by an assistant Ramsey County attorney. The second tape shown was one in which the doctor was examined on test results in this case. The defense was then allowed to cross examine the doctor on his testimony given in the foundation tape and his results in defendant's case. A third tape is available which shows a direct examination and a cross examination of Dr. Polesky in an unrelated case. Defense counsel wanted the third tape played, as the cross examination is

allegedly vigorous. The trial judge ruled that the third tape could not be shown. It is that ruling which appellant claims is erroneous.

Appellant alleges that the trial court's ruling denied him his right to cross examine adverse witnesses. Appellant's counsel was present when Dr. Polesky was examined about this case. Appellant's counsel had the opportunity to cross examine Dr. Polesky as to the foundation tape and the results in appellant's case. Appellant's counsel did conduct extensive cross examination as shown by the transcript.

The trial court's ruling must be upheld unless the court's discretion was abused. "The latitude to be allowed in cross examination on the merits is largely within the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion." *State v. Pearson,* 260 Minn. 477, 488, 110 N.W.2d 206, 214 (1961), citing *Klingbeil v. Truesdell,* 256 Minn. 360, 98 N.W.2d 134 (1959). There is no clear abuse of discretion in this case. Appellant was not denied his right to cross examination.

### III

■ Appellant claims the trial court committed reversible error by suppressing the testimony of undisclosed witnesses. Appellant knew of persons with information pertinent to the case and failed to disclose their existence. But, appellant claims that since these people were not going to be called at trial, disclosure was not required. That behavior violates the letter and the spirit of the Rules of Civil Procedure.

Plaintiff-respondent propounded the following interrogatory to defendant-appellant: "(21) What are the names, addresses, telephone numbers and employers of all persons you know of who have any information relevant to this case?" This interrogatory is allowed under Rule 33, Minn.R. Civ.P. One purpose of the interrogatory is to prevent unjust surprise and prejudice. *Fritz v. Arnold Manufacturing Co.,* 305 Minn. 190, 232 N.W.2d 782 (Minn.1975); *Gebhard v. Niedzwiecki,* 265 Minn. 471, 122 N.W.2d 110 (1963).

■ Appellant contends that at the close of the State's case, he requested that three witnesses be called to "rebut" and impeach witnesses called by the State. Appellant also alleges that he did not intend to call the three witnesses prior to trial and therefore disclosure was not required. Appellant misconceives his duty under the rules. He is required to identify anyone with knowledge of the case, regardless of his intent to call any person as a witness. An opposing party may wish to interrogate or depose the one identified. If the identity of one who has knowledge is known and not revealed, the party has impermissibly suppressed evidence.

Appellant claims the witnesses' testimony did not become pertinent to the case until the State had presented its case. Appellant was definitely aware of the testimony that was to be given in the State's case. Respondent had answered appellant's interrogatories, and appellant knew that respondent would testify that she had had intercourse only with appellant during the relevant time, and that she never told anyone that someone other than the appellant was the father. Appellant claims that these witnesses "surfaced" as a result of the State's case.

The need for those witnesses was certainly predictable. Had their names been disclosed as persons having relevant information as required by interrogatory number 21, the plaintiff would not have been prejudiced. Without such willingness to abide by the Rules of Civil Procedure, the trial court cannot be said to have abused its discretion.

### DECISION

The challenged rulings are well within the discretionary authority of the trial court. The judgment is affirmed.