*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0179**

Samuel David Berg, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 16, 2026**
**Affirmed**
**Harris, Judge**

Aitkin County District Court
File No. 01-CR-24-12

Tyler J. Martin, Martin Law, PLLC, Lake Elmo, Minnesota (for appellant)

Keith Ellison, Attorney General, Peter Magnuson, Thomas Ragatz, Assistant Attorneys General, St. Paul, Minnesota; and

Sebastian Mesa-White, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Wheelock, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this direct appeal from the judgment of conviction for felony domestic assault and fifth-degree assault, appellant argues that his convictions should be reversed because the district court abused its discretion by (1) instructing the jury that the defendant had a

duty to retreat from the victim's home, (2) allowing the state to admit prior convictions as impeachment evidence, (3) admitting prior relationship history as character evidence, and (4) denying appellant's request for a *Schwartz* hearing after a juror admitted to lying about the verdict.[1] We affirm.

**FACTS**

Following an altercation between appellant Samuel David Berg and victim J.A., respondent State of Minnesota charged Berg with felony domestic assault under Minnesota Statutes section 609.2242, subdivision 4 (2022), and one count of felony fifth-degree assault under Minnesota Statutes section 609.224, subdivision 4(b) (2022).

The matter proceeded to a jury trial. At trial, the state presented testimony from Berg; J.A.; two eyewitnesses, I.A. and J.H.; and responding law-enforcement officers. The state also introduced photographs of Berg's and J.A.'s injuries, certificates of two prior felony convictions for domestic assault and threats of violence, and recorded statements from J.A. and I.A. The following facts are presented in the light most favorable to the verdict.

Berg and J.A. had known each other for several years. J.A. was friends with Berg's father, and J.A. considered Berg to be "like a little brother." Over the years, Berg would live with J.A. "on and off" for periods of time.

_____

[1] "A *Schwartz* hearing provides a party an opportunity to impeach a verdict due to juror misconduct or bias." *Pulczinski v. State*, 972 N.W.2d 347, 361 (Minn. 2022). "A verdict may be impeached by testimony establishing that a juror gave false answers during voir dire that concealed prejudice or bias toward one of the parties." *Id.*

J.A. owned a small bunkhouse located on his property. In or around November 2023, J.A. offered to rent the bunkhouse to Berg because "he needed help." Berg's girlfriend and their child were also living in the bunkhouse. While Berg primarily resided in the bunkhouse, J.A. allowed Berg to access the kitchen and bathroom located in the main house.

In December 2023, J.A. invited a friend, J.H., over for breakfast. J.A.'s girlfriend was also present. Berg entered the kitchen and "was kind of giving [J.A.'s] buddy some crap." Berg also began arguing with J.A.'s girlfriend before he started "ripping" on J.A. At this point, J.A. asked Berg to "please leave" and to "[g]o outside." J.A. began nudging Berg toward the door, but Berg refused to leave. According to J.H., J.A. asked Berg to leave "three or four times, and it went on for three to five minutes and kind of went back and forth and eventually got worse." Berg then took a swing at J.A. but missed, and J.A. tackled Berg to the ground.

J.A.'s daughter, I.A., heard a thumping noise from downstairs, and came upstairs into the kitchen to see what was going on. I.A. witnessed J.A. positioned on top of Berg with his hands on Berg's collarbone to hold him down. Berg tried to attack J.A. by pulling his hair and trying to "eye gouge" J.A. J.A. told Berg, "I don't want to hurt you. I just want you to leave the house." J.A. got off Berg and led him toward the entryway. Berg then turned around and hit J.A. in the nose with his cellphone, and J.A. tackled Berg to the ground a second time. According to I.A., J.A. took him down to protect himself from Berg. J.A. told Berg that he would get off Berg if he agreed to leave, but Berg continued to resist.

3

Eventually, J.A. got off Berg, and I.A. pushed him out of the house. J.A. suffered scratches on his nose and a popped blood vessel in his left eye.

Police arrived on the scene and interviewed I.A. and J.H., who corroborated J.A.'s version of events. Police identified Berg as the main aggressor and arrested him. Upon review of Berg's criminal history, police learned that Berg was previously convicted of felony domestic assault in 2020 and felony threats of violence in 2021. The state charged Berg with felony domestic assault and felony fifth-degree assault based on his previous convictions.

### *Jury Trial*

One week before the trial, the state filed a motion in limine to introduce Berg's prior felony convictions as impeachment evidence under Minnesota Rule of Evidence 609(a) and as prior relationship evidence under Minnesota Statutes section 634.20 (2024). Specifically, the state sought to introduce a prior terroristic-threats conviction and two felony domestic-assault convictions, all of which occurred within the last ten years. *See* Minn. R. Evid. 609(b) (stating that evidence of a conviction is not admissible if the date of the conviction is more than ten years old). At the motion hearing, the state also sought to introduce two additional felony convictions. The parties stipulated to introducing a 2020 felony domestic-assault conviction and a 2021 terroristic-threats conviction. Following the motion hearing, the district court issued an order on impeachment evidence. The district court determined that Berg's three remaining felony convictions were admissible impeachment evidence under rule 609.

4

At trial, outside the presence of the jury, both parties addressed whether a self-defense instruction should be given to the jury. Berg argued that a self-defense instruction was proper because (1) J.A. made the "first physical contact" by nudging Berg, (2) Berg was afraid because J.A.'s hands were "near or around" his neck, and (3) Berg was in his own home and therefore he had no duty to retreat. The state argued that to be the initial aggressor, a person must initiate the first physical contact with aggressive intent. The state argued that while J.A. may have engaged in physical touch by ushering Berg toward the door, he was not the initial aggressor because he ushered Berg gently. The district court rejected Berg's self-defense instruction, finding that Berg "was the aggressor in this situation."

Both parties also argued whether the jury should be instructed that Berg had a duty to retreat. Berg argued that under the "castle doctrine," if an individual is within the confines of their own home, they do not have a duty to retreat. The state disagreed, asserting that Berg's home was the bunkhouse, not the main house, and that Berg only had access to the common areas of the home. The state also argued that Berg had a duty to retreat because he had no expectation of privacy in the common areas of the home. While it acknowledged the compelling arguments made by both parties, the district court agreed with the state. Thus, over Berg's objection, the district court instructed the jury that Berg "ha[d] a duty to retreat or avoid the danger if reasonably possible."

5

The jury found Berg guilty of felony domestic assault and gross-misdemeanor fifth-degree assault. Berg requested a poll of the jury,[2] and each juror agreed on the record that the verdict was their true and correct verdict.

**Schwartz *Motion Hearing***

The next day, a juror called the district court administrator's office and asked to speak with the presiding judge. The juror's phone call was transferred to the office supervisor. While on the call with the office supervisor, the juror became upset and indicated that she was having some "mental health concerns." The juror then stated, "I lied. I didn't agree with the end result." The office supervisor asked, "You mean the verdict?" The juror responded, "Yes." No further conversation took place between the juror and the office supervisor, and the presiding judge did not speak with or contact the juror. The district court promptly notified both parties.

Berg filed a motion for a mistrial, along with a supporting affidavit. In a responsive memorandum, the state argued that Berg must first move for a *Schwartz* hearing to determine whether a new trial is warranted. *Schwartz v. Minneapolis Suburban Bus Co.*, 104 N.W.2d 301 (Minn. 1960); Minn. R. Crim. P. 26.03, subd. 20(6) (providing procedures for post-verdict hearings on alleged juror misconduct). Moreover, the state argued that even if Berg moved for a *Schwartz* hearing, he would not be entitled to one because his

---

[2] "When a jury agrees on a verdict, the foreperson returns that verdict to the court on behalf of the entire jury. Jury polling is a process of asking each juror on the record whether he or she agrees with the verdict." *See State v. Bey*, 975 N.W.2d 511, 516 n.1 (Minn. 2022) (citing Minn. R. Crim. P. 26.03, subd. 20(5)).

supporting affidavit contained no allegation of juror misconduct. Berg then filed a response to the state's memorandum requesting a *Schwartz* hearing.

After a motion hearing in September 2024, the district court denied Berg's motion for a mistrial and his request for a *Schwartz* hearing. The district court explained that, since Berg's motion was solely based on the belief that the juror lied during the reading of the verdict and polling of the jury, questioning the juror in a *Schwartz* hearing would violate the rules of evidence because "the questions would center around matters affecting her mind or emotions during the jury deliberation process." The district court also reasoned that Berg's request for a *Schwartz* hearing was not based on the juror's "awareness of extraneous prejudicial information, any outside influences, or threats of violence or violent acts towards herself or other jurors."

The district court entered judgment of conviction for one count of felony domestic assault and one count of gross-misdemeanor fifth-degree assault. The district court imposed an executed 30-month sentence.

Berg appeals.

## DECISION

**I.** **The district court did not abuse its discretion by instructing the jury that Berg had a duty to retreat from J.A.'s home.**

Berg argues that the district court abused its discretion by instructing the jury that he had a duty to retreat or avoid the danger if reasonably possible because he was inside his home when he acted in self-defense against J.A.

"We review challenges to the district court's jury instructions for an abuse of discretion." *State v. Garza*, 3 N.W.3d 18, 20 (Minn. App. 2024) (citing *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019)). In doing so, we review jury instructions as a whole "to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). "A jury instruction is erroneous if it materially misstates the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011). We will grant a new trial if an appellant can establish that the jury instructions were erroneous and "if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Kuhnau*, 622 N.W.2d 552, 558-59 (Minn. 2001).

"[A] person may act in self-defense if he or she reasonably believes that force is necessary and uses only the level of force reasonably necessary to prevent the bodily harm feared." *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014). The elements of self-defense are:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Basting*, 572 N.W.2d 281, 285-86 (Minn. 1997).

"Generally, the law requires that a person retreat if reasonably possible before acting in self-defense." *Devens*, 852 N.W.2d at 258 (citing *State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001)). "[I]f a person is outside his or her home and can safely retreat, then the person's use of force is unreasonable as a matter of law." *Id.* A notable exception to

the duty to retreat is the castle doctrine, "which provides that a person has no duty to retreat from their home before acting in self-defense." *State v. Valdez*, 12 N.W.3d 191, 197 n.4 (Minn. 2024) (quoting *State v. Johnson*, 719 N.W.2d 619, 629 (Minn. 2006) (stating that defendant did not have duty to retreat before acting in self-defense because the shooting took place in upstairs bedroom of his home)). "Whether the duty to retreat applies is a question of law that appellate courts review de novo." *Devens*, 852 N.W.2d at 257.

At trial, Berg's counsel sought to instruct the jury that, under the castle doctrine, Berg had no duty to retreat or avoid the danger if reasonably possible because he was in the confines of his own home. The district court concluded that the castle doctrine did not apply, stating that "Mr. Berg, though a resident of the place . . . had a duty to retreat from this, what I will call, common area of the kitchen and entryway." Thus, the district court instructed the jury that Berg had a duty to retreat or avoid the danger if reasonably possible.

The district court relied on *Devens*. In that case, Devens was convicted of third-degree assault after confronting a nonresident in the hallway of his apartment building. *Id.* at 256. Devens invoked the castle doctrine, arguing that he had no duty to retreat because the apartment hallway constituted his home for purposes of self-defense. *Id.* at 257. The supreme court rejected that argument. It reasoned that, because he left the relative safety of his own apartment to confront the non-resident in a non-exclusive space owned by another, Devens had a duty to retreat to his apartment, if reasonably possible, before acting in self-defense. *Id.* at 259-60. The court emphasized that the home is a person's "sanctuary" and "safest place," "critical to the protection of the family," and explained that the castle doctrine extends only to a house, apartment, or portion of a structure where the

9

defendant lives and from which others are ordinarily excluded. *Id.* at 258-59 (quotations omitted). The supreme court further explained that whether a location qualifies as part of a defendant's dwelling for self-defense purposes depends on the extent to which the defendant exercises exclusive possession and control over the area. *Id.* at 259. Applying that principle, the court concluded that the hallway was not Devens's home because it was a shared space owned by the landlord and subject to use by others. *Id.* As a result, the hallway was not Devens's "safest place" or "sanctuary," and Devens therefore had a duty to retreat. *Id.*

Berg argues that the district court erred by instructing the jury that he had a duty to retreat or avoid the danger if reasonably possible because he was inside his home when he acted in self-defense against J.A. Berg relies on *Glowacki*, 630 N.W.2d 392 and *State v. Maykoski*, 583 N.W.2d 587 (Minn. 1998).

In *Glowacki*, the respondent was charged with assault, disorderly conduct, and domestic assault arising from an alleged physical altercation with a woman in his home. 630 N.W.2d at 394. Glowacki had met the woman, an Alabama resident, and maintained a long-distance romantic relationship with her involving frequent communication, mutual visits, and discussions of marriage and living together. *Id.* at 394-95. In March and April 1999, the woman began moving her belongings to Glowacki's Minnesota residence with the intent to relocate permanently. *Id.* Later that April, an argument between Glowacki and the woman escalated into a physical confrontation, resulting in Glowacki's arrest and criminal charges. *Id.* At trial, Glowacki asserted self-defense and requested a jury instruction to that effect. *Id.* at 396. The district court instructed the jury on self-defense

and included a duty-to-retreat instruction. *Id.* at 397. Glowacki was convicted of fifth-degree assault. *Id.*

The supreme court held that "[t]here is no duty to retreat from one's own home when acting in self-defense in the home, regardless of whether the aggressor is a co-resident." *Id.* at 402. The supreme court reasoned that "[r]equiring retreat from the home before acting in self-defense would require one to leave one's safest place." *Id.* at 401-02.

In *Maykoski*, the appellant was convicted of first-degree burglary under Minnesota Statutes section 609.582, subdivision 1 (1996). 583 N.W.2d at 588. The undisputed facts showed that, while fleeing from police, Maykoski entered the basement of an occupied residence. *Id.* The basement was accessible only through an exterior entrance and could not be entered from within the dwelling itself. *Id.* at 588-89. This court reversed the conviction and remanded for a new trial, concluding that the district court committed prejudicial error by refusing to instruct the jury on the lesser-included offense of fourth-degree burglary. The supreme court reversed, holding that the basement constituted "part of a dwelling house" and "clearly was a part of the occupied dwelling" for purposes of the burglary statute, notwithstanding the fact that it was accessible only from the outside. *Id.*

Berg's reliance on *Maykoski* is misplaced. *Maykoski* resolved a narrow statutory question concerning whether a basement with only an exterior entrance qualified as part of a dwelling for purposes of the burglary statute; it did not address—let alone analyze—the castle doctrine. Because *Maykoski* is substantively inapposite, it offers no support for Berg's position.

Berg's reliance on *Glowacki* is equally misplaced. Berg invokes the castle doctrine, arguing that the facts of this case are more analogous to *Glowacki* than *Devens*. We disagree. Unlike *Glowacki*, where the defendant was in his home and exercised exclusive possession and control, Berg was in a shared kitchen and entryway—common areas accessible to others. The kitchen area where the assault occurred is not a "home" for purposes of the castle doctrine but is instead analogous to the apartment hallway in *Devens*. The kitchen was a common area accessible to Berg during his residence in the bunkhouse and therefore lacked the privacy and exclusivity required to invoke the castle doctrine. By contrast, the bunkhouse itself—like the apartment in *Devens*—was Berg's "safest place." It was his private living space, the room he shared with his girlfriend and child, and a location from which he ordinarily excluded everyone else. By confronting J.A. in a nonexclusive area rather than retreating to the relative safety of the bunkhouse, Berg cannot claim that the incident occurred in his "safest place." We therefore conclude that, because Berg was required to retreat before acting in self-defense and the castle doctrine is inapplicable, the district court correctly instructed the jury on the duty to retreat.

## II. The district court did not abuse its discretion by allowing the state to impeach Berg through use of his prior felony convictions.

Berg argues that the district court erred by allowing the state to impeach him with evidence of his prior convictions. We review a district court's ruling on the impeachment of a witness by prior convictions for an abuse of discretion. *State v. Hill*, 801 N.W.2d 646, 651 (Minn. 2011). We will not reverse a district court's evidentiary ruling unless the appellant demonstrates that the district court abused its discretion and that the appellant

"was thereby prejudiced." *State v. Reek*, 942 N.W.2d 148, 162 (Minn. 2020) (quotation omitted).

Under Minnesota Rule of Evidence 609(a)(1), prior convictions may be admitted for challenging a witness's credibility if the crime "was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." "Evidence of a defendant's prior felony convictions may be admitted if 'the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.'" *State v. Williams*, 771 N.W.2d 514, 518 (Minn. 2009) (quoting Minn. R. Evid. 609(a)(1)).

In determining whether the probative value of impeachment evidence outweighs its prejudicial effect, the supreme court has laid out five factors under Minnesota Rule of Evidence 609(b):

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978). Each of Berg's prior convictions was punishable by more than one year of incarceration. Thus, we consider whether the probative value of the convictions outweighed their prejudicial effect.

Weighing each of the *Jones* factors, the district court concluded that all five factors favored admissibility of Berg's prior convictions, granting the state's motion to impeach.

13

Berg does not contest that the second and fifth *Jones* factors weigh in favor of admissibility. Instead, Berg challenges the remaining *Jones* factors, arguing that they weigh against admissibility.

**The Impeachment Value of the Prior Crime**

The supreme court has held that "any felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *Hill*, 801 N.W.2d at 652. "But crimes that have some bearing on dishonesty have more impeachment value than other crimes." *Zornes*, 831 N.W.2d at 627 (quoting *State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980)).

Berg argues that the first *Jones* factor strongly weighed against admission because his prior offenses were not crimes of dishonesty and offered minimal insight into his propensity for truthfulness. The district court concluded that the first *Jones* factor strongly favored admission because his prior felony convictions held impeachment value. While convictions for domestic assault or terroristic threats do not inherently demonstrate a willingness to lie, "a crime need not relate directly to truth or falsity to be admissible." *State v. Hochstein*, 623 N.W.2d 617, 624 (Minn. App. 2001).

Although Berg's prior felonies were not crimes of dishonesty, they were still felonies, which weighs in favor of their admission.

**Date of the Conviction and Subsequent History**

Berg's prior convictions occurred within ten years of the charged offense. *See* Minn. R. Evid. 609(b) (generally barring the admission of convictions for impeachment purposes when "a period of more than ten years has elapsed since the date of the

14

conviction"). Both Berg and the state agree that this factor favors admission of the prior convictions, and we agree.

### The Similarity of the Past Crime with the Charged Crime

The supreme court has held that when a prior conviction is similar to the offense charged, the risk of unfair prejudice from admitting the conviction increases. *Zornes*, 831 N.W.2d at 627 (citing *Bettin*, 295 N.W.2d at 546).

Here, the district court permitted the state to introduce evidence of five prior convictions: two convictions for terroristic threats (July 2015 and January 2021) and three convictions for felony domestic assault (July 2016 and August 2020). The district court concluded that the third *Jones* factor weighed in favor of admissibility. In reaching this conclusion, the district court reasoned that, although Berg was charged with domestic assault in the present case, his prior domestic-assault convictions were dissimilar because they involved romantic partners, whereas the charged offense involved a roommate.

Berg contends that the third *Jones* factor weighs strongly against admission because the charged offense is similar to his prior domestic-assault convictions, creating a substantial risk that the jury would place undue weight on the prior convictions. He further argues that the district court's distinction between "romantic partners" and "roommates" is insufficient to meaningfully distinguish the prior convictions from the charged offense.

We agree that Berg's three prior felony domestic-assault convictions resemble the charged domestic-assault offense and therefore weigh against admission under the third *Jones* factor. Berg's prior convictions for terroristic threats, however, are not similar to the charged offenses and therefore favor admission. Accordingly, the third *Jones* factor

15

cuts against admitting the domestic-assault convictions but supports admitting the terroristic-threats conviction.

### The Importance of the Defendant's Testimony and Centrality of Credibility

The supreme court has held that "[i]f credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). Both Berg and the state agree that credibility was a central issue in this case and, as such, the fifth *Jones* factor favors admission of the prior convictions. We agree.

Berg appears to suggest that the fourth *Jones* factor weighs against admissibility because admission of his prior convictions would cause him not to testify. Berg also suggests that his testimony is "essential to presenting his version of the events" because the witnesses were closer to the victim and therefore were "more inclined to tell [a] story in favor of [J.A.]." *See Zornes*, 831 N.W.2d at 628 ("[A] district court may exclude a defendant's prior convictions if their admission for impeachment purposes might cause the defendant not to testify *and* it is more important in the case to have the jury hear the defendant's version of the case than to allow him to be impeached.").

The record demonstrates that Berg agreed to testify after stipulating to the admission of his 2020 felony domestic-assault conviction and 2021 terroristic-threats conviction being introduced at trial. Additionally, the conflicting accounts between Berg and the other witnesses raises a credibility issue, which weighs in favor of admissibility. *See Swanson*, 707 N.W.2d at 655. Thus, the district court did not abuse its discretion in determining that the fourth *Jones* factor weighed in favor of admission.

16

The *Jones* factors are assessed collectively, and a single factor weighing against admission does not preclude admissibility. *See id.* at 655-56 (holding that although a prior assault conviction was similar to the charged offense, the remaining *Jones* factors favored admission). In sum, as to the domestic-assault convictions, four of the five *Jones* factors favor admission. And as to the two terroristic-threats convictions, all five *Jones* factors favored admission. Accordingly, the district court acted within its discretion when it admitted the prior five felonies as impeachment evidence.

III.   **The district court did not abuse its discretion when it admitted Berg's prior relationship history under Minnesota Statutes section 634.20.**

Berg asserts that the district court abused its discretion by introducing his prior relationship history as character evidence under Minnesota Rule of Evidence 404(b).

We will not reverse a district court's evidentiary ruling absent a clear abuse of discretion. *Dolo v. State*, 942 N.W.2d 357, 362 (Minn. 2020). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Vangrevenhof*, 941 N.W.2d 730, 736 (Minn. 2020) (quotation omitted). Evidence of a criminal defendant's other crimes or bad acts is inadmissible to prove that the defendant acted in conformity with those crimes or acts, but such evidence may be admitted for other purposes. Minn. R. Evid. 404(b)(1). Minnesota Statutes section 634.20 is an exception to the general rule that evidence of a defendant's prior, unrelated act is inadmissible. *See* Minn. R. Evid. 404(b); *State v. Spreigl*, 139 N.W.2d 167, 169-70 (Minn. 1965).

17

Under section 634.20, evidence of "domestic conduct" by the accused against other family or household members is presumptively admissible and may be excluded only if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20. "Domestic conduct" includes, but is not limited to, "domestic abuse" as defined by Minnesota Statutes section 518B.01 (2024). *Id.* Domestic abuse is defined as the "physical, bodily injury, or assault" committed against "a family or household member by a family or household member." Minn. Stat. § 518B.01, subd. 2(a)(1). "Family or household members" includes "persons who are presently residing together or who have resided together in the past." Minn. Stat. § 518B.01, subd. 2(b)(4). Relationship evidence under the statute may include evidence of a defendant's relationships with persons other than the victim. *See State v. Valentine*, 787 N.W.2d 630, 637-38 (Minn. App. 2010), *rev. denied* (Minn. Nov. 16, 2010).

We turn to the merits of Berg's argument. Berg contends that the district court abused its discretion by admitting evidence of three prior domestic assault convictions under section 634.20. He advances two arguments. First, Berg asserts that he cannot be considered a "household member" for purposes of section 634.20 while simultaneously being excluded from that status for purposes of invoking the castle doctrine. Second, he argues that the prior-conduct evidence lacked probative value and therefore should have been excluded.

Berg first argues that the state selectively characterized the parties as household members only when advantageous, emphasizing that he and J.A. did not have a significant romantic relationship and that his prior romantic relationships were unrelated to J.A. As an initial matter, Berg cites no authority—and we are aware of none—holding that the definition of "household member" under section 634.20 governs the applicability of the castle-doctrine to a claim of self-defense. Moreover, Berg's argument lacks merit. Under the castle doctrine, a person has no duty to retreat from their own home when acting in self-defense; thus, the relevant inquiry for castle-doctrine purposes was whether Berg had exclusive custody and control over the entryway to J.A.'s home and kitchen, as required by *Devens*, 852 N.W.2d at 259 (stating that a particular location is part of a defendant's dwelling depends on whether the defendant exercises exclusive possession and control over the area in question). By contrast, section 518B.01, subdivision 2(b)(4), defines a household member, in relevant part, as a person who is presently residing with another. The standard for determining whether an individual qualifies as a "household member" for purposes of section 634.20 is much lower than the exclusive custody and control required for the castle doctrine to apply: a household member need only "presently reside" with the other person.

The record supports the district court's finding that J.A. met the statutory definition of "household member" under section 518B.01, subdivision 2(b)(4). The district court's determination that Berg had access to portions of J.A.'s home and therefore qualified as a household member for purposes of section 634.20 is not inconsistent with its castle-doctrine analysis.

19

Next, Berg argues that the prior-conduct evidence lacks probative value. Evidence "has probative value when it, in some degree, advances the inquiry." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005); *see also* Minn. R. Evid. 401 (defining "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). This court previously recognized that "evidence showing how a defendant treats his family or household members . . . sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *Valentine*, 787 N.W.2d at 637.

At trial, the state introduced evidence of three prior domestic assault incidents involving appellant: a June 2023 domestic assault in Rochester in which the victim had facial bruising and a cut on her chin; an April 2015 assault in which appellant pushed the victim's head against a car window, assaulted her, and threatened to kill her, resulting in a felony terroristic-threats conviction; and an April 2016 incident resulting in a felony domestic-assault conviction. The testimony about Berg's prior conduct is probative because it contextualizes J.A.'s allegations. Section 634.20 relationship evidence is also relevant when it assists the jury with making witness-credibility determinations. *See State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004) (affirming the admission of relationship evidence that "assisted the jury by providing a context with which it could better judge the credibility of the principals in the relationship"). At trial, Berg attacked J.A.'s credibility, as well as the credibility of the other witnesses. As such, the prior conduct evidence had significant probative value because it assisted the jury with evaluating credibility.

The record shows that the district court admitted evidence of Berg's three prior domestic incidents as evidence pursuant to section 634.20. The district court weighed the probative value of Berg's prior domestic conduct and found that it would not unfairly prejudice Berg. Additionally, Minnesota law has previously distinguished evidence offered under section 634.20 and rule 404(b), and Berg's prior relationship history falls squarely under section 634.20. *See McCoy*, 682 N.W.2d at 161 ("[W]e expressly adopt Minn. Stat. § 634.20 as a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse."); *see also State v. Bell*, 719 N.W.2d 635, 639 (Minn. 2006) (noting the distinctions between section 634.20 evidence and rule 404(b) evidence).

Therefore, the district court did not abuse its discretion by introducing evidence of Berg's domestic conduct under section 634.20.

## IV. The district court acted within its discretion by denying Berg's motion for a *Schwartz* hearing.

Finally, Berg argues that the district court abused its discretion by denying his request for a *Schwartz* hearing. Berg asserts that "the pressure the juror in question felt, and lengthy deliberations, led her to vote guilty, raising questions about her motivations and the influences behind her decision." Furthermore, Berg asserts that the district court can infer from the juror's statements to the office supervisor that the juror was "clearly pressured in some way to vote guilty." This argument is unavailing.

The United States and Minnesota Constitutions guarantee the right to a trial by an impartial jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. When a defendant learns

21

facts suggesting the possibility of juror misconduct after a verdict has been rendered, the defendant may move the court for a *Schwartz* hearing to determine whether improper considerations affected the jury's decision. *Schwartz*, 104 N.W.2d at 361. A defendant is entitled to a *Schwartz* hearing when they present a prima facie case that, "standing alone and unchallenged, would warrant the conclusion of jury misconduct." *State v. Martin*, 614 N.W.2d 214, 225-26 (Minn. 2000) (quotation omitted). The moving party bears the burden of making a prima facie case. *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979).

"The standard of review for denial of a *Schwartz* hearing is abuse of discretion." *State v. Church*, 577 N.W.2d 715, 721 (Minn. 1998). A district court may deny a hearing where the defendant's offer of proof includes inadmissible evidence. *Martin*, 614 N.W.2d at 226 (affirming denial of defendant's motion for a *Schwartz* hearing where the proffered evidence required testimony about jury deliberations). Minnesota Rule of Evidence 606(b) generally prohibits evidence of "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or . . . the juror's mental processes in connection therewith." At the *Schwartz* hearing, the defendant may present juror testimony about "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror" in reaching the verdict. Minn. R. Evid. 606(b); *see* Minn. R. Crim. P. 26.03, subd. 20(6) (incorporating Minn. R. Evid. 606(b)).

The district court found that Berg failed to establish a prima facie case of juror misconduct. The district court reasoned that Berg's request for a *Schwartz* hearing was based solely on the juror's statements that she "lied" during the reading of the verdict. The

22

district court noted that a *Schwartz* hearing would improperly "center around matters affecting upon her mind or emotions during the jury deliberation process," which is prohibited by rule 606(b). *See* Minn. R. Evid. 606(b). Additionally, the district court found that Berg's filings failed to indicate that the juror's statement was based on the awareness of extraneous prejudicial information, outside influence, threats of violence, or violent acts towards herself or other jurors.

Berg does not point to any evidence in the record to support his contention that the juror was "clearly pressured" in some way. Rather, Berg merely speculates what he believes the juror may have felt based on her brief statement that she "lied" and that she "didn't agree with the end result." *See Martin*, 614 N.W.2d at 226 (stating that an appellant is not entitled to a *Schwartz* hearing on the basis of wholly speculative allegations of misconduct without more); *see also State v. Mings*, 289 N.W.2d 497, 498 (Minn. 1980) (holding that a *Schwartz* hearing was unwarranted for a claim that was wholly speculative and not based on evidence reasonably suggesting misconduct). We, therefore, conclude that the district court acted within its discretion by denying Berg's motion for a Schwartz hearing.

**Affirmed.**